602 P.2d 1036 (1979)
In the Matter of BABY GIRL WILLIAMS, a Child Under Eighteen (18) Years of age.
Judith WILLIAMS, Appellant,
v.
Phyllis Marie MASHBURN and Thomas Lee Mashburn, Appellees.
No. 50114.
Supreme Court of Oklahoma.
November 6, 1979.
James H. Hiatt, Marilyn Staats, Stan L. Foster, Oklahoma City, for appellant.
Jack W. Ross, Broken Arrow, for appellees.
*1037 HARGRAVE, Justice.
This case involves an appeal from an Order terminating parental rights in Baby Girl Williams. Appellant is the natural mother and appellees are the paternal aunt *1038 and uncle in whom custody of the child has been temporarily placed.
Baby Girl Williams was born August 6, 1975, at which time her mother, Judith Williams a/k/a Kellenberger was confined in Eastern State Hospital at Vinita, having been adjudged an incompetent person. The child's father, Billy Williams, was also confined at Eastern State Hospital as an adjudged incompetent, but he is presently absent without leave from that institution. The father is not a party to this appeal.
On August 13, 1975, Baby Girl Williams was placed in the temporary custody of the paternal aunt and uncle, Phyllis Marie Mashburn and Thomas Lee Mashburn, by order of the District Court of Oklahoma County. Pursuant to a petition filed by appellees, a hearing was held February 4, 1976 at which Baby Girl Williams was adjudged a dependent and neglected child and made a ward of the Court. Custody remained in the appellees.
On June 22, 1976, appellees filed a petition praying for termination of the parental rights of Billy Williams and Judith Williams (a/k/a Judith Kellenberger). A hearing was set for August 17, 1976, but was continued in order to give her attorney and guardian more time to bring Judith before the court when her guardian, Marilyn Staats, showed that Judith could not be in attendance at the hearing due to her confinement.
At the continued hearing, of August 31, 1976, the attorney for Judith Williams moved the trial court to grant another continuance or to compel the attendance of Judith Williams before the Court. Ms. Williams' attorney was unable to bring his client before the Court because her incarceration prevented her from attending voluntarily. Prior attempts to compel the attendance of Ms. Williams had been unsuccessful, allegedly due to the Oklahoma County sheriff's refusal to transport the mother from Vinita because of her inability to pay for her transportation. The Court overruled the motion to compel attendance or to grant another continuance and from this denial Judith Williams appeals on Due Process grounds, and denial of her right to confrontation of witnesses.
The appellant's attorney also entered a demurrer for failure of the petition to state a cause of action and for reason that the action was brought pursuant to an unconstitutional statute (10 O.S.Supp. 1975 § 1130) that is improperly vague and overbroad, according to appellants. Appellant also argues that the statute puts the burden of proof on the mother to show a change of condition and is thus a denial of her right to due process of law.
On appeal, appellant's major contentions are that 1) the trial court's order terminating the parental rights of Judith Williams was not supported by the evidence, 2) the trial court erred in failing to compel the attendance of the mother at the hearing at which her parental rights were terminated, thereby denying her right to cross-examine witnesses, 3) the trial court was without authority to terminate her parental rights because the statute under which the proceedings were brought is unconstitutionally vague and it places the burden of proof on the mother to show why her parental rights should not be terminated, rather than placing the burden upon the parties seeking termination, and 4) the petition failed to state a cause of action.
We agree with appellant's contention that the trial court's termination of her parental rights is not supported by the evidence. Although the Order determining that Baby Girl Williams is dependent and neglected was not appealed from, that hearing is a procedural step under our statute for terminating parental rights, so its effect must be considered here. The petition filed by appellees below stated only that Baby Girl Williams was dependent and neglected within the terms of the statute because "both of its legal parents have been legally determined to be incompetent and have no legal ways, no means by which to provide for the care of this child."
The only evidence admitted at the hearing to determine dependent and neglected status (from the record before us) was a *1039 letter from the Superintendent of Eastern State Hospital at Vinita. Appellant's guardian had herself requested a written report from the hospital concerning Judith's mental condition. That the Court itself needed the report for further consideration of the case is evidenced by the Court's order of January 27, 1976 compelling the report, which read: "... it further appearing that additional information is needed by the Court in its deliberations regarding Judith Williams' mental condition." The order required a written report containing diagnosis and prognosis of Judith Williams' mental condition to be sent before the adjudicatory hearing. What the Court received in response from Eastern State Hospital was a one-paragraph letter from the superintendent, an M.D., stating the psychological name for Judith's condition and stating that most of Judith's life had been spent in mental institutions since 1966 and since Judith was still quite sick, the prognosis as to her functioning outside an institution was poor. This letter was admitted by agreement at the adjudicatory hearing.
Thus, if any standards at all emerged from the hearing which adjudicated the child dependent and neglected, they are only such findings that: 1) the mother is confined in a mental hospital, and 2) the letter from the superintendent at Eastern State Hospital was admitted into evidence. Both of these "standards" are related only to the fact that the mother is confined to a mental hospital. Neither of these standards reflects a situation where the parent has wilfully failed to provide for the child or where there is danger of harm to the child. As this Court stated in Matter of Sherol A.S., 581 P.2d 884 (Okl. 1978), at page 888:
[Despite this Court's division] "on many aspects of our involuntary termination procedure. There is, however, one important point on which we all agree [is]: The purpose of termination is to protect children from HARM suffered by reason of either neglect or the intentional actions of their parents.... There is no authority in our Juvenile Code which allows the State to interfere with the family relationship where harm to the children is not involved." (citing 10 O.S. 1971 § 1130(c)(3).
In that opinion we continue:
"... The fundamental integrity of the family unit, which has found protection in the Due Process and Equal Protection clauses of the Fourteenth Amendment and the Ninth Amendment, is subject to intrusion and dismemberment by the State only where a `compelling' State interest arises and protecting the child from harm is the requisite State interest." (citations omitted)
No evidence was introduced at the termination hearing on August 31, 1976 to the effect that appellant would never be released from custody or that appellant would not, at some time in the future, be able to assume custody of her child. Indeed, the letter from the superintendent at Eastern State Hospital was not admitted into evidence at the dispositional hearing and the trial judge specifically stated that he would not consider the letter in his determination. (The trial judge presiding at the termination hearing was a different one from the initial hearing authority.)
In short, the conditions which were found in the case of Judith Williams to be sufficiently compelling to adjudicate her child as dependent and neglected represent merely an unfortunate circumstance that prevents the mother from being able to have physical custody of her child. There is no evidence introduced or even alleged which indicates an intent to abandon her child, any wilful refusal to provide for the child, etc. The appellant's failure to provide support for her child is also attributable to her confinement because of her mental condition, not wilful neglect.
As mentioned above, however, the order determining Baby Girl Williams to be dependent and neglected and made a ward of the court is not appealed from. There is no question that physical custody of her child cannot be with the mother at this time. We do not believe, however, that the mother's physical inability to live with her *1040 child and support it justifies the severing of her parental rights to her child forever. (See Justice Simms' dissent in J.V. v. State of Oklahoma, Okl., 572 P.2d 1283, at pp. 1291 and 1293; see also p. 352 of Matter of J.L., Okl., 578 P.2d 349 (1978): "[S]eparation itself is not necessarily a basis for termination of parental rights.")
This Court has previously held our statute constitutional in providing for termination of parental rights. The decision in Matter of J.F.C., Okl., 577 P.2d 1300 is dispositive of that issue. In that opinion, this Court noted the statute provides different stages of adjudication and disposition; thus providing the parent with notice of what conduct resulted in the adjudication of dependent and neglected status and that those same conditions must be corrected to prevent termination of parental rights. The entire crux of the argument supporting the constitutionality of our statute is that it provide the parent notice of the conditions which must be corrected.
In Matter of J.F.C., supra, at page 1303, in discussing the termination procedure under our statute, this Court stated:
"... The adjudication by the court can in itself be looked upon as a set of standards which can be utilized at the hearing in the determination of parental rights. Thus, just as a parent has fair warning of the sanction, the parent is also provided with a standard by which to guide his conduct."
The holding by this Court in J.F.C., supra, reversed the trial court order terminating parental rights because clearly against the weight of evidence. In so holding we stated:
"In Matter of Moore [Okl., 558 P.2d 371] supra, we said the burden of persuasion as to change of conditions was upon the parent after the allegations of the petition to terminate were sustained. To sustain the pleading to terminate trial court must apply the standards of conduct which emerge from the adjudicatory stage. To be affirmed on appeal the record, likewise, must show this Court what those standards were."
.....
"... we can find no pleadings or evidence from which we can ascertain what standards evolved from the prior adjudication upon which a standard of conduct could have been set for the present termination of parental rights. For this reason we are reversing trial court's order."
It is clear that in the case at bar, no standards of conduct were set out to provide the court, at the termination hearing, with a criterion for determining whether the parent has corrected those conditions giving rise to the adjudication order. If no standards of conduct are set out at the adjudication stage, the parent is given no notice as to what he or she will be called upon to prove to the court in a later termination hearing. The trial court cannot be heard to terminate the rights of a parent for failure to correct conditions which indicate wilful neglect or harmful conduct to a child when those standards or conditions have never been brought to the attention of the parent in the first place.
For the reason that no standards were promulgated from the adjudication of dependency and neglect to put the mother on notice as to what conditions would have to be shown to be corrected in order to prevent termination of parental rights, we hold that the trial court order terminating parental rights must be reversed. Mere confinement in a mental hospital, while necessitating custody of a child being placed elsewhere, does not constitute failure to give a child the necessary parental care or protection required for his mental or physical health within the purview of our termination statute.
Our termination statute requires a showing that permanent termination is necessary to protect the physical or mental or moral health of the child. Appellee's own testimony established that the child was being well cared for and that there was no immediate threat to the child's welfare if the present custody situation continued into the future. In a situation such as that *1041 before this Court, the mother's right to be informed of the conditions she will be required to change must take precedence where there is no immediate threat of harm to the child and no showing that the child is not being well cared for or that the parent is unfit, etc. A termination procedure such as this one is a significant involvement of the rights of a parent to the natural child. The mother's right to know what conditions she is charged with correcting in the adjudicatory stage in order to retain her parental rights has been confirmed by this Court. In the absence of notice of such standards having been established in the adjudicatory stage of the proceeding, the termination cannot be affirmed.
REVERSED.
LAVENDER, C.J., IRWIN, V.C.J., and WILLIAMS, SIMMS, DOOLIN and HARGRAVE, JJ., concur.
OPALA, J., concurs in result.
HODGES and BARNES, JJ., dissent.
BARNES, Justice, dissenting:
I must respectfully dissent from the majority opinion, though I would reach the same result as that opinion, but for different reasons.
The majority holds that the order adjudging Baby Girl Williams as dependent and neglected failed to give adequate notice to Judith Williams, the child's mother, as that order did not apprise her of the conditions giving rise to the child's being adjudicated as dependent and neglected. This being the case, the majority concludes that Ms. Williams did not have notice of the conditions or standards which had to be met by her, in order to avoid termination of parental rights. While I believe the basic statement of the principle is correct, I cannot agree with its application in the case before us.
The order declaring Baby Girl Williams dependent and neglected indicates that her mother appeared through a guardian ad litem, and that the case had been continued in order to obtain a written report from Eastern State Hospital at Vinita, Oklahoma, concerning the present condition and the future prognosis of Ms. Williams.
The order also sets forth that a written report from Dr. Joe Tyler was presented and admitted in evidence without objection of the parties.
Although the order does not specifically, on its face, indicate that Baby Girl Williams was being declared dependent and neglected because of the mother's present condition and prognosis, I cannot say that Ms. Williams was prejudiced by the trial court's omission, for the only issue as to the mother's fitness to parent revolved around her present mental condition and future prognosis. Dr. Tyler's report which was introduced into evidence indicated that Ms. Williams was suffering from chronic undifferentiated schizophrenia. The report also stated that she is still seriously sick and that in the doctor's opinion the prognosis of Ms. Williams' functioning outside of an institution remained poor. This written report was, in the order adjudicating Baby Girl Williams to be dependent and neglected, made part of the proceedings and admitted into evidence without objection.
Given this factual background, I do not believe that Ms. Williams' guardian ad litem, also functioning as her attorney, could in good conscience argue that she was unaware of the conditions which needed to be corrected. Therefore, I would hold that Ms. Williams was not prejudiced by the trial court's failure to specifically enunciate the conditions upon which the child was declared dependent and neglected.
I do, however, believe that Ms. Williams was prejudiced by the trial court's refusal to provide for her appearance at the determination hearing, as there was no evidence showing that her appearance would be futile. I would, for this reason, reach the same result as that reached by the majority.
Lastly, I would note that the majority opinion suggests that only wilful neglect can form the basis of a child's coming within the purview of the statute. I do not agree with this suggestion. A quick example, I believe, will demonstrate the fault of such an analysis. Let us assume that a *1042 widower, who was a fine parent and citizen, is injured in an automobile accident and by virtue of the accident is totally paralyzed, unable to communicate and unable to function, and will for the rest of his life remain so. Surely, though his inability to care for his children and to parent was not due to any willful act on his part, this widower is no longer fit to parent, and it would be in the best interest of his children to be placed with those who are capable of parenting. Yet, if we were to accept the suggestion of the majority opinion, this widower's children would never be available for adoption, for his parental rights could never be terminated.
For the above stated reasons, I respectfully dissent from the majority opinion.