In the Matter of A.D.B. and N.B., minor children.

STATE of Oklahoma, Appellee,

v.

T.S., Appellant.

No. 72300.

Supreme Court of Oklahoma.

Oct. 1, 1991.

B. Joyce Smith, Legal Services of Eastern Oklahoma, Muskogee, for appellant.

John David Luton, Asst. Dist. Atty., Muskogee, for appellee.

KAUGER, Judge.

Two issues are presented by this termination proceeding: 1) whether the petition contained sufficient facts to put the mother on notice of the grounds asserted for termination of her parental rights;[1] and 2) whether pursuant to 10 O.S.Supp.1987 § 1130(A)(3),[2] parental rights may be terminated in the same proceeding in which a child is adjudicated as deprived. We find that: 1) Under the facts presented, the

---

1. The father voluntarily relinquished his parental rights to A.D.B. and N.B. before the trial court and is not a party to this appeal. A third child, P.B., born in February, 1988, is not a subject of this termination proceeding.

2. Title 10 O.S.Supp.1987 § 1130(A)(3) provides: "The finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations:
    3. A finding that:
       a. the child is deprived, as defined in this chapter, and
       b. such condition is caused by or contributed to by acts or omissions of his parent, and
       c. termination of parental rights is in the best interests of the child, and
       d. the parent has failed to show that the condition which led to the making of said finding has not been corrected although the parent has been given three (3) months to correct the condition; provided, that the parent shall be given notice of any hearing to determine if the condition has been corrected. The court may extend the time in which such parent may show the condition has been corrected, if, the judgment of the court, such extension of time would be in the best interest of the child. During the period that the parent has to correct the condition the court may return the child to the custody of its parent or guardian, subject to any conditions which it

allegations in the petition are sufficient to set forth a cause of action for termination of the mother's parental rights to A.D.B.; and 2) Parental rights may not be terminated in the same proceeding in which the deprived status of a child is adjudicated, because pursuant to 10 O.S.Supp.1987 § 1130(A)(3), a parent has a minimum of three months in which to demonstrate that the conditions leading to the finding that a child is deprived have been remedied. Parental rights to N.B. could not be terminated simultaneously with a finding of deprived status.

### FACTS

The appellant, T.S. (mother), was sixteen years old and residing in foster care as a child adjudged in need of supervision when her first child, A.D.B., was born on March 12, 1985. On March 15, 1985, the appellee, State of Oklahoma (State), filed a petition alleging that A.D.B. was dependent and/or neglected because the mother was unable to provide the child with proper parental care and guardianship. On April 16, 1985, the mother entered stipulations to the juvenile petition. On the same date, an adjudication was entered finding A.D.B. to be a deprived child and placing custody with the Department of Human Services (Human Services). Human Services placed A.D.B. in foster care with her mother. Although the foster parent attempted to teach T.S. parenting skills, the mother admits that she was not always a willing nor a good student. Testimony by the foster parent indicated that T.S. refused to sterilize A.D.B.'s bottles,[3] was hesitant to feed, bathe, or change her diapers, was vocally abusive to the child, and gave her little emotional nurturing.

When A.D.B. was three months old, the mother left the child in foster care and moved in with A.D.B.'s maternal grandmother. The mother took A.D.B. out of foster care for visits, but the child was returned to the foster home dirty and hungry. On November 18, 1985, custody of A.D.B. was returned to the mother under supervision of Human Services. The mother moved into her sister's home with A.D.B. in September of the next year. The mother left A.D.B. with her sister (aunt), and custody was placed with the aunt on September 30, 1986. During the short time that the mother lived in the aunt's home with A.D.B., she let the child go dirty and allowed her to suffer a severe sunburn. A.D.B. also developed an aggravated diaper rash from wearing dirty diapers. The child has been continually in the custody of her aunt since September of 1986. The mother has visited A.D.B. irregularly, seeing her on only two occasions between January and October of 1988.[4]

The mother married A.D.B.'s father and the couple lived with the paternal grandparents from October 1986 to August 1987.[5] N.B. (the second child) was born on December 6, 1986. The mother's pattern of neglect continued with N.B. She refused to change the child's diapers and to sterilize her bottles. She taped a pacifier in the child's mouth to keep her from crying at night. In early May, she took N.B. to a baby sitter along with clothing, food and diapers. She did not return for the child. After three days, the mother called the paternal grandparents asking them to pick up N.B. On May 11, 1987, the paternal grandparents became N.B.'s guardians. N.B. has lived with her paternal grandparents her entire life. The mother saw her daughter approximately ten times between August of 1987 and July of 1988. She did not visit the child between July and October of 1988.

---

may wish to impose or the court may place the child with an individual or an agency ..."

3. A.D.B. was hospitalized on one occasion from food poisoning apparently caused by drinking formula out of dirty bottles.

4. The mother indicated that the infrequent visits resulted from a misunderstanding between herself and her sister's boyfriend and a lack of transportation. The mother's father-in-law testified that he had offered to give the mother a ride whenever she wanted to see either of her children.

5. Testimony indicates that the father was not in the home continually throughout this period and that, for about three weeks during this time, the parents lived in an apartment in Tulsa. The mother left the home in May and did not return until July. During this time period, the mother admitted working as a prostitute.

In November of 1987, the mother moved back into the maternal grandmother's home. A third child, P.B., was born in February of 1988. Between May and October, the mother and P.B. moved three times. There was conflicting testimony concerning the mother's care of P.B. Some witnesses indicated that P.B. suffered from the same neglect the mother had shown toward A.D.B. and N.B. However, one witness testified that the mother provided excellent care for P.B.

The record contains nine service plans relating to A.D.B. These plans were prepared by Human Services and filed with the trial court. They contain the standards the mother was required to attain to regain custody of A.D.B. The goals outlined in the plans are virtually identical and require that: 1) the mother attend parenting classes; 2) she maintain a place of residence for at least six months; and 3) the mother find employment to enable her to care for her own and for A.D.B.'s needs. The mother signed the service plan dated December 23, 1987. She gave conflicting testimony concerning her understanding of the standards imposed. However, she admitted that: 1) she was given an opportunity to read the plan; 2) the plan was explained in open court before the trial judge; and 3) she told the judge that she understood what was required under the service plan.

The mother has not completed any of the goals set out in the service plan. She attended parenting classes on an irregular basis. She has not been employed steadily since A.D.B.'s birth in 1985. However, when the termination hearing was held, she had obtained her GED and completed dental assistant training.[6] The mother made approximately fourteen moves between the time A.D.B. was adjudicated as a deprived child and the termination hearing. The mother did not keep Human Services advised of her address during many of these moves.

On July 25, 1988, the State filed a petition to terminate the mother's parental rights to A.D.B. The petition alleged that: 1) A.D.B. was residing with her maternal aunt; 2) she had been adjudicated as a deprived child in accordance with stipulations entered by the mother; 3) the child should be made a ward of the court as a deprived child; and 4) the mother's parental rights should be terminated. The State amended its petition on September 14, 1988. The amended petition contained the same allegations concerning A.D.B. and additionally alleged that: 1) the mother had not provided proper parental care and guardianship for the second child, N.B.; 2) the mother had wholly failed in her commitment of support and responsibility to N.B.; 3) N.B. was residing with her paternal grandparents; 4) both children should be made wards of the court as deprived children; and 5) parental rights to both children should be judicially severed.

The hearing in the cause was conducted on October 5 and November 21–23, 1988. The trial court found that although the mother had been presented with a number of service plans, she had not satisfactorily accomplished the required goals. Finding that the conditions causing A.D.B. to be deprived also existed as to N.B., the trial court terminated parental rights to both children. Judgment was entered terminating parental rights on November 23, 1988. The trial court stayed its judgment pending a final decision on appeal. The Court of Appeals affirmed finding that the petition contained sufficient facts to put the mother on notice that her parental rights were in jeopardy and that the same elements causing A.D.B.'s deprived status applied to N.B. We granted certiorari on March 11, 1991.

### I.

UNDER THE FACTS PRESENTED, THE ALLEGATIONS IN THE PETITION ARE SUFFICIENT TO SET FORTH A CAUSE OF ACTION FOR TERMINATION OF PARENTAL RIGHTS AS TO A.D.B.

▮ The mother argues that she was

---

**6.** The record contains a letter from a counselor at Bryan Institute indicating the mother's excellent performance in the vocational training program.

denied due process [7] because the amended petition failed to give her notice of the statutory grounds the State relied upon for termination of her parental rights. The State asserts that the petition was sufficient to advise the mother of the reasons for which termination was sought and that the mother was put on notice of the norms she must achieve to avoid termination by the court imposed standards provided during judicial review of A.D.B.'s deprived status. Because we find the allegations in the petition were sufficient to apprise the mother that her rights to A.D.B. were in jeopardy and to inform her of the grounds for termination, we need not address the issue of the role the court imposed standards played in advising the mother of her rights.[8]

Petitions filed in juvenile proceedings are governed by 10 O.S.Supp.1990 § 1103(B).[9] The statute provides that if termination of parental rights is sought, it must be stated in the petition and summons.[10] We find *Matter of Daniel,* 591 P.2d 1175, 1178 (Okla.1979) instructive in our quest to determine the sufficiency of the petition filed in the instant cause.[11] The parents in *Dan-*

---

**7.** The Okla. Const. art. 2, § 7 provides:

"No person shall be deprived of life, liberty, or property, without due process of law."
United States Const. amend. 5 provides in pertinent part:
"No person shall be ... deprived of life, liberty, or property, without due process of law ..."
United States Const. amend. 14, § 1 provides in pertinent part:
"... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**8.** We do note that in a termination proceeding a court must impose the standards arising from the adjudicatory hearing; and that just as a parent is given fair warning of the sanction, the standards provide the parent with a pattern to guide his/her conduct to avoid termination. *Matter of Baby Girl Williams,* 602 P.2d 1036, 1040 (Okla.1979); *Matter of J.F.C.,* 577 P.2d 1300, 1303 (Okla.1978).

**9.** See, *Davis v. Davis,* 708 P.2d 1102, 1107 (Okla. 1985); *M.L.R. v. State,* 740 P.2d 1201, 1203 (Okla.Ct.Crim.App.1987).

Title 10 O.S.Supp.1990 § 1103(B) provides:
"A petition in a juvenile proceeding may be filed by the district attorney or the person who is authorized to make a preliminary inquiry to determine if further action is necessary. The proceeding shall be entitled 'In the matter of _____ an alleged (delinquent) (deprived) child or (a child alleged to be in need of supervision) or (a child alleged to be in need of treatment)'.
The petition shall be verified and may be upon information and belief. It shall set forth (1) with particularity facts which bring the child within the purview of Chapter 51 of this title; (2) the name, age and residence of the child; (3) the names and residences of his parents; (4) the name and residence of his legal guardian, if there be one; (5) the name and residence of the person or persons having custody or control of the child; (6) the name and residence of the nearest known relative, if no parent or guardian can be found; (7) the relief requested; and (8) the specific federal law, state law or municipal ordinance under which the child is charged, and an endorsement of witnesses intended to be called by the petitioner, where the child is sought to be adjudged a delinquent child under Chapter 51 of this title. If a termination of parental rights is desired, it must be stated in the petition and summons, and if an order for the payment of funds for the care and maintenance of the child is desired, it must be stated in the petition and summons. If any of the facts herein required are not known by the petitioner, the petition shall so state, along with the reasons why said facts are not known to petitioner."

Section 1103(B) has been revised since the instant cause was filed in 1988. However, because the quoted portion of the statute is identical to the statute in effect at the time the cause was filed, all references are to the 1990 version of § 1103(B). The mother does not assert that the statute sets any standard for pleading in a termination proceeding other than that the petition must set forth the prayer for termination. The enumerated items contained within the statute must be alleged in an adjudicatory hearing. Title 10 O.S.Supp.1990 § 1101(8) provides:

" 'Adjudicatory hearing' means a hearing to determine whether the allegations of a petition pursuant to the provisions of Section 1103 of this title are supported by the evidence and whether a child should be adjudged to be a ward of the court."

An identical definition for "adjudicatory hearing" appears in the 1987 version of the statute in effect when the instant cause was filed.

**10.** Title 10 O.S.Supp.1990 § 1103(B), see note 9, supra.

**11.** Like its current counterpart, 10 O.S.Supp. 1990 § 1103, see note 9, supra, the statute in

*iel,* like the mother here, challenged the sufficiency of a petition filed in a juvenile proceeding. The State alleged in *Daniel* that: 1) the children were residing in a children's home; 2) the parents had been unable to provide proper and necessary care; 3) the whereabouts of the father was unknown and that the mother was in a mental institution; and 4) the children be adjudicated dependent and placed in temporary custody of the children's home. Noting that we were dealing with a dependency adjudication rather than with a termination proceeding, we held that the facts alleged in the petition were sufficient to set forth a cause of action for dependency.

Here, the amended petition alleged that: 1) A.D.B. was in the custody of her maternal aunt; 2) she had been adjudged a deprived child on April 15, 1985 in accordance with stipulations agreed to by the mother; 3) A.D.B. be made a ward of the court as a deprived child; and 4) the mother's rights be terminated. The allegations in the petition are almost identical to those found sufficient in *Daniel.* Additionally, when the mother here entered her stipulation in the cause to have A.D.B. adjudicated as a deprived child, she recognized that she was unable to provide A.D.B. with "proper parental care and guardianship"—a statutorily provided definition for a "deprived child".[12] We recognize that an essential element of due process is the right to know the grounds upon which a right may be affected.[13] Here, the State prayed that A.D.B. be declared a deprived child and the mother's rights be terminated.[14] The petition contained an allegation that A.D.B. was deprived as stipulated to by the mother in the adjudicatory stage.[15] Termination could be sanctioned only on a finding that the mother failed to correct the very conditions which led to the adjudication of A.D.B.[16] Under the facts presented, the allegations in the petition are sufficient to set forth a cause of action for termination of the mother's parental rights to A.D.B.

## II.

PARENTAL RIGHTS MAY NOT BE TERMINATED IN THE SAME PROCEEDING IN WHICH THE DEPRIVED STATUS OF A CHILD IS ADJUDICATED, BECAUSE PURSUANT TO 10 O.S.SUPP.1987 § 1130(A)(3), A PARENT HAS THREE MONTHS IN WHICH TO DEMONSTRATE THAT THE CONDITIONS LEADING TO THE FINDING THAT A CHILD IS DEPRIVED HAVE BEEN REMEDIED. PARENTAL RIGHTS TO N.B. COULD NOT BE TERMINATED SIMULTANEOUSLY WITH A FINDING OF DEPRIVED STATUS.

■ The mother contends that the simultaneous adjudication of the second child,

---

effect when *Matter of Daniel,* 591 P.2d 1175 (Okla.1979) was decided required that the facts bringing a child within the purview of the Dependent and Delinquent Children Act, 10 O.S.Supp.1972 § 1101 et seq. be set forth with particularity. Title 10 O.S.Supp.1973 § 1103 provides in pertinent part:

"... (b) The petition shall be verified and may be upon information and belief. It shall set forth (1) with particularity facts which bring the child within the purview of this act ..."

**12.** Title 10 O.S.1991 § 1101(4) provides in pertinent part:

"'Deprived child' means a child:
... b. who does not have the proper parental care or guardianship ..."

Although § 1101(4) has been amended since the petition to declare A.D.B. a deprived child was filed, the statute in effect at the time of the original filing contained the same definition.

**13.** *Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18, 41 (1976); *Jackson v. Independent School Dist. No. 16,* 648 P.2d 26, 30 (Okla.1982). See also, L. Tribe, *American Constitutional Law,* ch. 10, § 10–7, p. 666 (2nd Ed. Foundation Press, Inc.1988).

**14.** Title 10 O.S.Supp.1990 § 1103(B), see note 9, supra, and accompanying discussion of the requirements in a termination proceeding.

**15.** The Juvenile Code recognizes two types of hearings—adjudicatory—10 O.S.Supp.1990 § 1101(8), see note 9, supra—and dispositional—10 O.S.Supp.1990 § 1101(9). *A.E. v. State,* 743 P.2d 1041, 1047 (Okla.1987); Title 10 O.S.Supp.1990 § 1101(9) provides:

"'Dispositional hearing' means a hearing to determine the order of disposition which should be made with respect to a child adjudged to be a ward of the court."

**16.** *Matter of J.F.C.,* see note 8 at 1302, supra.

N.B., as a deprived child and the termination of the mother's parental rights is contrary to the provisions of 10 O.S.Supp. 1987 § 1130(A)(3).[17] The State insists that adjudication of a child's deprived status and severance of the parental bond may be achieved in the same proceeding.

In *Matter of C.G.*, 637 P.2d 66, 69 (Okla. 1981), we addressed the precise issue presented by the instant cause—the time frame within which a parent's rights may be terminated on the grounds that a child is deprived. Because the statutory provision considered in *C.G.*—10 O.S.Supp.1977 § 1130(A)(3) [18]—and 10 O.S.Supp.1987 § 1130(A)(3) [19] are virtually identical, we find the reasoning of *C.G.* controlling.

The father's parental rights in *C.G.* were severed in a proceeding instituted sixteen months after his child was adjudicated as deprived. The father in *C.G.* was not provided with judicially-prescribed norms of conduct which could be achieved to avoid final termination of his parental rights. We held that minimum standards of due process require that a parent be given notice of the standards he/she must attain to evade a final severance of the parental bond. We also found that pursuant to 10 O.S.Supp.1977 § 1130(A)(3) once norms are fashioned with clarity, the parent is entitled to the minimum statutory period of three months to conform.[20] Parental rights may not be terminated in the same proceeding in which a finding of deprivation is entered. Section § 1130(A)(3) allows the parent a minimum of three months in which to correct the conditions leading to the adjudication before the parent may be asked to defend a termination proceeding.

The State relies on language found in *A.E. v. State*, 743 P.2d 1041, 1043 (Okla. 1987) and *Davis v. Davis*, 708 P.2d 1102, 1109 (Okla.1985) for the proposition that parental rights may be terminated in the same proceeding in which a child's deprived status is adjudicated. The reliance is misplaced. In *A.E.* and *Davis*, we stated that any termination of parental rights pursuant to 10 O.S.1981 § 1130 required either a

---

**17.** Title 10 O.S.Supp.1987 § 1130(A)(3), see note 2, supra.

**18.** Title 10 O.S.Supp.1977 § 1130(A)(3) provides in pertinent part:
"The finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations: A finding that the child is deprived, as defined in this chapter, and that such condition is caused by or contributed to by acts or omissions of his parent and that termination of parental rights is in the best interests of the child, and that the parent has failed to show that the condition which led to the making of said finding has not been corrected although the parent has been given three (3) months to correct the condition; provided, that the parent shall be given notice of any hearing to determine if the condition has been corrected; provided further, that the court may extend the time in which such parent may show the condition has been corrected, if, in the judgment of the court, such extension of time would be in the best interest of the child...."

**19.** Title 10 O.S.Supp.1987 § 1130(A)(3), see note 2, supra.

**20.** *A.E. v. State*, see note 15 at 1043, supra; *Matter of T.R.W.*, 722 P.2d 1197, 1203 (Okla. 1985). See also, *Matter of J.L.*, 578 P.2d 349, 351 (Okla.1978) (Construing 10 O.S.Supp.1976 § 1130); *Matter of J.F.C.*, see note 8 at 1302, supra (Construing 10 O.S.Supp.1975 § 1130), in which prior versions of § 1130 were considered. In both *J.L.* and *J.F.C.*, this Court found that regardless of when the matter of termination first arose, parental rights could be terminated only after a period of six months from the time the child was adjudicated dependent or neglected. Title 10 O.S.Supp.1976 § 1130 provides in pertinent part:
"A. The finding that a child is delinquent, or mistreated or neglected, shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations: ... 3. A finding that a parent who is entitled to custody of the child:
... c. is unfit by reason of debauchery, intoxication, or habitual use of narcotic drugs, or repeated lewd or lascivious behavior or other conduct that is detrimental to the physical or mental health or morals of the child, and the parent has failed to show that the conditions have been corrected within a period of six (6) months after the child, or children, were adjudged dependent or neglected and a permanent termination of parental custody of the child, or children, is necessary to protect its physical or mental health or morals ..."
The 1975 version of § 1130 considered in *J.F.C.* is identical to the quoted portion of the amended 1976 statute.

prior or a simultaneous adjudication of a child's deprived status. However, in both causes, we also found that the prior adjudication must precede termination. Additionally, in *A.E.* we held that in absence of a prior adjudication of the child's deprived status, the father's parental rights could not be terminated. The lack of the prior adjudication left the trial court without the requisite foundation upon which to terminate the father's parental rights. The rationale behind the rule found in *A.E.* and *Davis* is to allow the parent time to correct the behavior which caused the state to intervene in the parent/child relationship.[21] The mother here was not afforded that opportunity in regard to N.B. N.B. was not declared a deprived child until the trial court ruled in the termination proceeding. No standards for parental conduct were imposed in relation to the mother's conduct toward the second child, N.B. The mother was not given an opportunity to correct the conditions leading to the deprived-status adjudication.

## CONCLUSION

The safety and welfare of children has a constitutional dimension which is no less compelling than the parents' interest in the preservation of family integrity. Each must be shielded with equal vigor and solicitude.[22] We know that the best interest and welfare of the child is the primary consideration, but we also know that this goal is best achieved by full compliance with the law.[23] The allegations in the petition seeking termination of the mother's parental rights to A.D.B. were sufficient to state a cause of action for severance of the parental bond. However, pursuant to 10 O.S.Supp.1987 § 1130(A)(3),[24] the mother was entitled to a minimum of three months to correct conditions leading to the finding that the second child, N.B., was deprived. Because a finding of deprived status and termination in the same proceeding

stripped the mother of the statutorily granted time period in which to correct any parenting deficiencies, the termination as to N.B. cannot be sanctioned.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; TRIAL COURT AFFIRMED IN PART; REVERSED IN PART.

OPALA, C.J., and SIMMS, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

HARGRAVE, J., dissents.

LAVENDER, Justice, concurring in part, dissenting in part, with whom HODGES, Vice Chief Justice, joins.

I would affirm the trial court.

21. *Matter of R.J.W.,* 789 P.2d 233–34 (Okla. 1990).

22. *Matter of Jerry L.,* 662 P.2d 1372, 1374 (Okla. 1983); *In re T.H.L.,* 636 P.2d 330, 334 (Okla. 1981).

23. *A.E. v. State,* see note 15 at 1048, supra.

24. Title 10 O.S.Supp.1987 § 1130(A)(3), see note 2, supra.