2000 OK CIV APP 95

In The Matter of B.L.S., date of birth 09–09–84, L.A.B., date of birth 09–20–87, and B.W.O., date of birth 01–30–91, deprived children.

State of Oklahoma, Petitioner/Appellee,

v.

Cynthia Carter, Natural Mother, Respondent/Appellant.

No. 94306.

Court of Civil Appeals of Oklahoma, Division No. 1.

July 7, 2000.

Marlie Lawrence, Sapulpa, Oklahoma, for Appellant,

Pamela Hammers, Sapulpa, Oklahoma, for Appellee,

Melinda D. Johnson Ryan, Sapulpa, Oklahoma, for Appellee, Minor Children.

## OPINION

JONES, P.J.:

¶ 1 The mother of B.L.S., a girl born September 9, 1984, L.A.B., a girl born September 20, 1987, and B.W.O., a boy born January 30, 1991, appeals an order terminating her parental rights. In November, 1993, the children were removed from the home as the result of physical abuse to the children by the mother's husband at that time and adjudicated deprived. The mother's husband was convicted of child abuse. The mother completed her court-ordered treatment plan and

her children were returned to the mother's custody.

¶2 On February 22, 1996, the children, again, were taken into emergency custody by the Department of Human Services (DHS). On March 4, 1996, the State of Oklahoma (State) filed a petition to adjudicate the minor children as deprived based on the mother's physical abuse of the children, and her failure to protect the children from abuse by others. The mother appeared at the hearing and waived a jury trial. She further stipulated that she had abused her children and had failed to protect them from abuse by others. The children were adjudicated deprived.

¶3 A disposition hearing was held on July 1, 1996. The treatment plan adopted by the trial court provided that the mother would complete a psychological evaluation and follow any recommendations for treatment. The evaluating psychologist recommended that mother refrain from cohabiting with anyone for a period of two years due to her co-dependent personality and past abusive relationships. The treatment plan further provided that the mother would obtain suitable (legal) employment and maintain the same job for a period of at least six months; complete parenting classes; attend a support group that deals with issues of co-dependency; attend a support group for domestic violence; refrain from negative comments or discussion of this litigation with the minor children; individual counseling; and pay child support.

¶4 The mother completed the psychologist evaluation, completed parenting classes, attended classes on co-dependency, classes on domestic violence and individual counseling. The mother did not refrain from cohabiting with anyone, instead she remarried as soon as her last divorce was final. The mother did not demonstrate that she had maintained employment for six months. The mother only had telephone contact with the girls because after each visit the girl's therapy regressed severely. The mother's phone calls were monitored because the mother did make inappropriate comments to the girls. The mother did not pay child support. The mother's failure to comply with the plan led

the State two and half years later, on November 2, 1998, to file its Application to Terminate Parental Rights. A hearing was held on January 10, 2000, resulting in an order terminating the mother's parental rights. The mother appeals.

¶5 On appeal, the mother argues: 1) the trial court erred in directing a verdict on the factual issue of whether the mother corrected the conditions leading to the deprived adjudication of her children; 2) the trial court abused its discretion in admitting prejudicial evidence; 3) the trial court abused its discretion in disallowing the children's testimony on the mother's behalf; 4) she received ineffective assistance of counsel; and, 5) DHS contributed to her failure to correct the conditions necessary to prevent this termination. Pursuant to *10 O.S. Supp.1998 § 7006-1.1*, to terminate parental rights, the State must show, by clear and convincing evidence, that (a) the child is deprived; (b) such condition is caused or contributed to by acts or omissions of his parent; and, (c) termination of parental rights is in the best interest of the child. The burden of evidence or persuasion then shifts to the parent to show by clear weight of the evidence that conditions have changed and have been corrected since the adjudication of the deprived child. *In the Matter of Christopher H.,* 1978 OK 50, 577 P.2d 1292, 1293.

¶6 We will only address the issue of whether the trial court erred in directing a verdict on the factual issue of whether the mother corrected the conditions leading to the deprived adjudication of her children as it is dispositive. The State moved for a directed verdict on this issue at the close of their presentation of evidence. The State argued that the mother had admitted she had not met every single condition mandated by the treatment plan. The mother argued that a material fact question existed because she believed she had made sufficient changes in her life to correct the reason her children were taken into DHS custody. The trial court directed the verdict on this issue. After this ruling, the trial court ordered that the mother was precluded from presenting any evidence regarding her compliance with the treatment plan. This ruling precluded

the mother from demonstrating she had corrected the conditions which led to the necessity of a treatment plan. Thus, the ruling has the effect of preventing the mother's showing proof of the ultimate question involved here, that the conditions necessitating the plan had been corrected.[1]

 ₍ ¶ 7 The legal standard that governs motions for a directed verdict and those for summary judgment is very similar. Neither may be sustained unless there is an *entire* absence of proof on a material issue. Both should be denied when there are questions of material fact or reasonable persons could differ regarding the choice of inferences to be drawn from the facts in evidence. In determining whether a party's evidence is sufficient to withstand a motion for a directed verdict, the trial court must consider as true all evidence favorable to the nonmoving party, together with all reasonable inferences to be drawn from it, and disregard all conflicting evidence favorable to the movant. Only if all the inferences to be drawn from the evidence are in favor of the moving party will a directed verdict withstand appellate scrutiny. *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, 948 P.2d 298, 301–02.

 ¶ 8 The State urges that once the mother admitted she had not met all of the conditions, no fact question remained for the jury on this issue. The service plan is most often used by the parties in termination cases to prove their cases. However, the plan is nothing more than evidence used to prove the statutory elements. The State uses noncompliance with the plan as evidence that parental rights should be terminated because the bad conditions caused by the parent's actions or inactions have not been corrected within the statutory time. The parent uses compliance with the plan to show the conditions leading to the adjudication have been corrected. *In the Matter of J.M.*, 1993 OK CIV APP 121, 858 P.2d 118, 120. While the mother admitted she did not meet all of the requirements as specifically outlined, the mother, in her limited testimony, did create a question of fact regarding whether she had changed the conditions resulting in the deprived status of her children. This question of fact was created during the State's direct examination when the mother testified she believed she had corrected the main condition leading to her children being removed from her home because she was no longer in an abusive relationship. She had married a stable man and she had been living in a stable, nonviolent home with her new husband for fourteen months. The mother testified repeatedly that she had turned her life around. Not only was a fact question created, but the directed verdict in effect precluded the mother from rebutting the State's prima facie case. The interest of children in a wholesome environment has a constitutional dimension no less compelling than a parent has in the preservation of family integrity. In the hierarchy of constitutionally protected values, both interests rank as fundamental and must hence be shielded with equal vigor and solicitude. *In re T.H.L.*, 1981 OK 103, 636 P.2d 330, 334.

¶ 9 Pursuant to *Harder*, the trial court may only direct a verdict when there is an *absence* of proof on a material issue. Here, the jury may have believed that while the mother did not meet all of the express conditions of the treatment plan, she had substantially changed her lifestyle to have corrected the condition which led to the removal of her children. The trial court erred in directing a verdict when there was disputed evidence presented on this material fact question. This matter is reversed and remanded for proceedings consistent with this opinion.

¶ 10 REVERSED AND REMANDED.

¶ 11 GARRETT, J., and BUETTNER, J., concur.

---

1. The ultimate question is of course the best interest of the children. *Matter of A.D.B.*, 1991 OK 96, 818 P.2d 483, 490.