2002 OK CIV APP 129

**In the Matter of T.M., an alleged deprived child.**

**State of Oklahoma, Appellee,**

**v.**

**Lawrence Kirkpatrick, Appellant.**

**No. 96,092.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 12, 2002.

L. Wayne Woodyard, Pawhuska, OK, for Appellant.

Keith Sims, Assistant District Attorney, Pawhuska, OK, for Appellee.

## OPINION

CARL B. JONES, Judge:

¶1 Lawrence Kirkpatrick (Father) appeals the trial court's judgment terminating his parental rights to his child, T.M. (Child). Father contends the State of Oklahoma (State) failed to sustain its burden of proving with clear and convincing evidence that Father's parental rights should be terminated. This Court finds the trial court's judgment terminating Father's parental rights is supported by clear and convincing evidence and affirm.

¶2 On March 6, 1996, the State filed a petition to have Child adjudicated deprived on the grounds that Father placed his mouth upon Child's privates, and the mother failed to protect Child. After a trial held July 19 and 20, 1996, the jury returned a verdict finding that Child was deprived. The trial court entered its order of adjudication and no appeal was taken from that order.

¶3 On August 7, 1996, the trial court entered a disposition order and adopted a six point treatment plan.[1] The treatment plan was thereafter amended to incorporate the following three points recommended in a psychological evaluation of Father: Father was required to 1) successfully attend and complete an offenders group and follow all rec-

ommendations made by the individual conducting the group; the individual must be a licensed professional specializing in offenders groups; 2) successfully attend and complete individual counseling by a licensed psychologist; and 3) pay child support as assessed by the court.

¶4 On October 16, 1998, Father sought modification of the treatment plan to remove the condition that he attend offenders therapy because he denied he sexually molested Child and he refused to admit he committed any sexual abuse as required by the offenders classes; therefore, he would not be credited with completing the counseling and could be subjected to a motion to terminate his parental rights. Father's motion to modify was denied on October 10, 1999.

¶5 On October 27, 1999, State filed a motion to terminate Father's parental rights. State alleged Father failed, refused and neglected to perform the conditions ordered by the court and Father failed to show the conditions which led to Child's deprived adjudication have been corrected even though Father has been given in excess of three (3) months to correct the conditions. The State also urged the termination was in Child's best interests. Thereafter, the mother's parental rights to Child were terminated; however, the mother's parental rights are not at issue here.

¶6 A non-jury trial was conducted on December 5, 2000, January 8, 2001 and February 26, 2001. Evidence revealed Father did not complete the requirements for individual counseling and the offenders group therapy. On February 26, 2001, the trial court found the primary condition which led to the deprived adjudication was Father's sexual abuse of Child. And, Father's refusal to complete the requirements for offenders group therapy and individual counseling was clear and convincing evidence that Father failed to correct the conditions which led to

---

1. The treatment plan required Father to: 1) cooperate with the case worker assigned to the case; 2) maintain a home suitable for the rearing of Child; 3) demonstrate income which is sufficient for the rearing of said child and for taking care of Father; 4) not use, abuse or be in possession of any liquor, wine, beer or dangerous drugs or go around places where these items are kept or sold; 5) not use, abuse or be in possession of prescriptive drugs for which they do not have a prescription; and 6) obtain and complete any counseling as recommended by the Department of Human Services (DHS) and provide reports as required which show satisfactory progress in the counseling program to the DHS case worker.

the deprived child adjudication. The trial court also found it was in Child's best interest to terminate Father's parental rights because evidence revealed that Child has not bonded with and does not desire to see Father.

¶ 7 In proceedings to terminate parental rights, the paramount consideration is the health, safety, welfare and best interests of the child. 10 O.S. Supp.1998 § 7006–1.1(A). The presumption is that a child's best interest lies in preserving family integrity; thus, the State must show the elements required for the termination of parental rights under § 7006–1.1(A) [2] with clear and convincing evidence. *In re K.C.*, 2002 OK CIV APP 58, ¶ 5, 46 P.3d 1289, 1291. The burden of persuasion then shifts to the parent to show conditions have changed and have been corrected since the deprived child adjudication. *In re T.M.*, 2000 OK CIV APP 65, ¶ 18, 6 P.3d 1087, 1094.

■■■■8 In order to affirm the trial court's findings in its termination order, "appellate review in a parental-bond-severance proceeding must demonstrate the presence of clear-and-convincing evidence to support the first-instance decision." *In the Matter of S.B.C.*, 2002 OK 83, ¶ 7, 64 P.3d 1080, ¶ 7. Previously, the legal standard of appellate review applied by this Court when reviewing the findings of a trial court sitting without a jury was whether there is any competent evidence reasonably tending to support the trial court's findings, and if so, this Court will not disturb the trial court's judgment terminating parental rights. See *Bradley v. Clark*, 1990 OK 73, ¶ 3, 804 P.2d 425, 427 (In a common-law case where the jury is waived, the trial judge's determination of the facts bears the force of a verdict rendered by a well-instructed jury. It must be affirmed if supported by any competent evidence.) Granted, the State has the burden to prove that termination is in the best interests of the child by clear and convincing evidence. *In re T.M.*, 2000 OK CIV APP 65 at ¶ 18, 6 P.3d at 1094. However, the ruling in *In the Matter of S.B.C.*, *supra*, now requires this Court to serve as the 13th juror to re-weigh the evidence and determine again whether there was clear and convincing evidence—a task which is difficult to undertake when faced only with the printed words of the cold appellate record.

■■■ ¶ 9 This Court has examined the evidence before the trial court and determines the trial court's findings that Father failed to correct the conditions which led to the deprived child adjudication are supported by clear and convincing evidence.

■■■ ¶ 10 Father first urges that he substantially complied with the valid conditions imposed upon him by the treatment plan but admits he did not comply with the requirement that he obtain offenders therapy. Father contends this condition never became operative and thus was not a valid condition. Father bases this argument on his psychological evaluation which stated "[i]f the child maintains some inappropriate

---

2. A court may terminate the rights of a parent to a child pursuant to 10 O.S. Supp.1998 § 7006–1.1(A)(5) upon a finding that: (a) the child has been adjudicated to be deprived, and (b) such condition is caused by or contributed to by acts or omissions of the parent, and (c) termination of parental rights is in the best interests of the child, and (d) the parent has failed to show that the condition which led to the adjudication of a child deprived has been corrected although the parent has been given not less than three (3) months to correct the condition. Pursuant to § 7006–1.1(A)(10), a court may terminate the rights of a parent to a child upon a finding in a deprived child action either that: (a) the parent has physically or sexually abused the child or a sibling of such child or failed to protect the child or a sibling of such child from physical or sexual abuse that is heinous or shocking to the court, (b) the child or sibling of such child has suffered severe harm or injury as a result of such physical or sexual abuse, (c) the parent has physically or sexually abused the child or a sibling of such child or failed to protect the child or a sibling of such child from physical or sexual abuse subsequent to a previous finding that such parent has physically or sexually abused the child or a sibling of such child or failed to protect the child or a sibling or such child from physical or sexual abuse, (d) the child has been adjudicated a deprived child, pursuant to the provisions of the Oklahoma Children's Code, as a result of a single incident of severe sexual abuse, severe neglect or the infliction of serious bodily injury or torture to the child, a sibling of the child, or a child within the household where the child resides, by the parent of the child, or (e) the parent has inflicted chronic abuse, chronic neglect or torture on the child, a sibling of the child or another child within the household where the child resides.

touching happened, then Mr. Kirkpatrick should be referred to Family and Children's Services Offenders Group." Father urges since the offenders therapy was conditioned upon Child maintaining some inappropriate touching occurred and since he presented evidence in the termination proceeding that Child made inconsistent statements with regard to whether the touching occurred, he did not have to comply with this condition. This Court is unpersuaded by Father's position. Due to the nature of this termination proceeding which follows a deprived child adjudication based solely on the allegation of Father's inappropriate behavior, this Court is unwilling to adopt Father's position that court ordered offenders group therapy is inoperative unless Child continually affirms the inappropriate behavior occurred. To impose such a requirement would not be in Child's best interest.

■ ¶ 11 Father next asserts he attempted to comply with the requirement for individual and offenders counseling, but was unable to do so because he would have had to admit to his guilt; waive his constitutional right to remain silent under the 5th Amendment of the United States Constitution; and subject himself to criminal prosecution. Father urges his parental rights should not be terminated simply because he refused to waive his 5th Amendment rights. Father's premise is based on *Matter of J.M.*, 1993 OK CIV APP 121, 858 P.2d 118. There, the court held the trial court's finding that parental rights should be terminated because neither parent attended the required sex offenders program on a regular basis was unsupported by competent evidence. In *Matter of J.M.*, the parents stipulated to the facts behind the deprived children adjudication; they stipulated they could not or would not improve the sanitary condition in their home and were unable to meet the emotional, developmental and physical needs of their children. There was no stipulation or admission of the allegation that the father sexually molested his daughter, J.M., and the record presented no competent evidence of sexual abuse. Notwithstanding, the treatment plan required the parents to attend Bethesda, a private agency for counseling in the area of child sexual abuse. The record revealed Bethesda unilaterally terminated the parents' counseling without seeking modification of the court order, knowing attendance at the program was part of the court ordered plan; knowing there were no local alternative programs which accepted indigent clients; and knowing that termination of parents from the program could result in parents losing their parental rights. As a result, the court stated:

> Because it is clear that Bethesda was the only game in town for indigent people, in this instance, Bethesda is impermissibly imbued with powers greater than the Constitution. If Mr. M. were guilty of sexual abuse, then his admission would amount to an involuntary relinquishment of his 5th Amendment right against self-incrimination because Bethesda is required to report such crimes to the authorities. If he is, or is not, guilty of such conduct, and denies the conduct, he is terminated from the program and risks the loss of his parental rights to his children. The integrity of the family is recognized as having constitutional dimension.

*Id.* at ¶ 7, 858 P.2d at 121 (citation omitted).

¶ 12 *Matter of J.M.* is distinguishable from the instant case. Here, Child was adjudicated deprived because of the allegation of sexual abuse by Father and not because of environmental neglect or lack of parenting skills. Further, unlike the parents in *Matter of J.M.*, Father was not unilaterally terminated from a offenders program which is the "only game in town." Evidence revealed that Father completed the intake with the Parent Child Center and an initial meeting with Dr. Randy Lopp, but was not accepted by the Center and did not complete counseling with Dr. Lopp because Father denied his guilt. Thereafter, DHS provided Father with a written list of approximately ten (10) alternative programs, some of which would not require Father's admission of guilt, from which Father could obtain the required counseling. However, Father admittedly did not utilize the list or pursue these potential counseling sources because he did not consider the offenders group therapy requirement to be

valid. This Court finds there was clear and convincing evidence that Father could have complied with the treatment plan by investigating and attempting to qualify for counseling though the additional sources provided by the DHS, but he chose not to. For these reasons, this Court rejects Father's contention that he is excused from obtaining offenders therapy because of his 5th Amendment right.

¶ 13 Next, Father urges since he substantially complied with the treatment plan requirements, his failure to complete the offenders therapy is not evidence of failure to complete the imposed conditions. This Court acknowledges Father's failure to comply with the treatment plan in itself is not a ground for termination. *Matter of J.M.*, 1993 OK CIV APP 121 at ¶ 4, 858 P.2d at 120. However, the test is not whether there has been "substantial compliance" with a treatment plan as urged by Father; rather, it is whether the State showed with clear and convincing evidence that Father failed to correct the condition which led to the deprived child adjudication; and, the child's best interests are served by terminating Father's parental rights. *Id.* Since the deprived child adjudication arose from an allegation of sexual abuse on Father's part against Child, this Court finds the most substantive portions of the disposition order and treatment plan were the requirements for individual counseling and offenders group therapy. Father's admitted failure to comply with these requirements amounts to clear and convincing evidence that he failed to correct the condition which led to Child's deprived adjudication.

■ ¶ 14 Father also urges his failure to obtain individual therapy does not support termination of his parental rights because he had no notice of the specific individual counseling he was required to obtain. Father contends the recommendation for individual counseling was discretionary to the extent he "needed" such counseling. He urges since no specific need was addressed and no specific counseling was identified, he had no notice of the specific counseling required. Father cites to *Matter of Baby Girl Williams*, 1979 OK 150, 602 P.2d 1036, as support for his position. There the court held the standards

of conduct must be set out at the adjudication stage to provide the parent with notice of what he or she will be called upon to prove in a later termination hearing. And, if the parent has no notice of the standards or conditions, the trial court cannot be heard to terminate the rights of a parent for failure to correct such conditions. *Id.* at ¶ 17, 602 P.2d at 1040. However, the distinction between the facts in *Matter of Baby Girl Williams* and this case is that Father had notice of the specific conduct which led to the deprived child adjudication and of the requirement for individual counseling through a court order.

■ ¶ 15 Father finally argues he was denied the opportunity to comply with the treatment plan requirements due to actions by DHS. He urges DHS refused to permit the recommended "joint therapy" between Father and Child and refused to change the treatment plan or make necessary referrals for Father to attend a sexual awareness class. This Court recognizes it is error for a trial court to terminate parental rights "where a parent's failure to correct the conditions is contributed to by the agents to whom is entrusted the duty to help salvage the family relationship." *Matter of J.M.*, 1993 OK CIV APP 121 at ¶ 5, 858 P.2d at 121. However, this Court agrees with the trial court's determination that DHS was not at fault in this matter. The evidence in the record reveals that DHS cooperated with Father by suggesting alternative resources for individual counseling and offenders group therapy. DHS did not refuse to make necessary referrals as urged by Father; instead, evidence reveals DHS refused to provide Father with written confirmation that he was a non-offender so that he may attend the sexual awareness class. Also, DHS did not prevent the joint therapy, but properly deferred same until Father completed individual therapy and offenders group therapy. Since Father chose not to complete these conditions, his own actions prevented the joint therapy. This Court finds DHS's actions were consistent with the conditions set forth in Father's treatment plan.

¶ 16 Under these circumstances, this Court finds the trial court's findings that Father failed to correct the conditions which led to

the deprived child adjudication are supported by clear and convincing evidence. Accordingly, the judgment of the trial court terminating Father's parental rights to Child is affirmed.

¶ 17 AFFIRMED.

JOPLIN, V.C.J., and BUETTNER, J., concur.