858 P.2d 118 (1993)
In the Matter of J.M. and J.M., minor children,
DAVID M. and Lisa M., Appellants,
v.
STATE of Oklahoma, Appellee.
No. 79502.
Court of Appeals of Oklahoma, Division No. 3.
June 29, 1993.
Henry N. Herbst, Norman, for appellant David M.
William R. Geyer, Norman, for appellant Lisa M.
Steven D. Brinkley, Asst. Dist. Atty., Norman, for appellee.
Released for Publication by Order of the Court of Appeals of Oklahoma, Division No. 3.

*119 OPINION

HUNTER, Judge:
After trial to the court, David and Lisa M.'s parental rights in their children were terminated on account of the parents' failure to satisfactorily comply with the court-ordered service plan. The parents had stipulated to the facts behind the order adjudicating their children deprived which were that they could not or would not improve the sanitary conditions in their home and that they were unable to meet the emotional, developmental and physical needs of their children because they did not understand what those needs were and how those needs could be met. The parents did not stipulate to or in any way admit the allegation that the father, David M., sexually molested the daughter, J.M. The record presented for review contains no competent evidence of sexual abuse. The doctor's report is not before us and the two statements, of the child and of one counselor, are uncorroborated hearsay. The court entered a deferred adjudication on the molestation charge. The revised service plan, which was identical for each parent and which was the standard the court used in determining that the parents rights in their children should be terminated, stated:
1. Complete the intake process at Bethesda Alternatives, Inc. If accepted into their program, s/he will attend with a 90% attendance rate following all treatment recommendations.

*120 2. Item # 1 is struck from this service plan. Mr/s. M. shall enter into individual and/or family therapy with a qualified therapist to explore and gain a working understanding of the dynamics of sexual abuse. This understanding will include issues surrounding all aspects of sexual abuse. Attendance requirements will be determined by the service provider and be maintained at a level of 90% with progress and attendance noted by the therapist.
3. Continue participation at the Cleveland County Guidance Clinic as described in prior service plan. (note: previous plan stated goals at Cleveland Co. Guidance Center were learning parenting skills, including appropriate ways of interacting with and disciplining children. Parents were to maintain an 80% attendance rate and follow therapist's suggestions.)
4. Maintain a stable and clean home environment as described in prior service plans.
5. Maintain full time employment as described in prior service plans.
6. Continue frequent visitation with the children of at least twice per month. DCW may increase frequency of visitation. Visitations may be supervised or unsupervised upon therapists recommendations.
7. Pay monthly child support as required by the court. (note: child support during time children were in foster care was set at $40.00 per month.)
8. Maintain twice monthly contact with worker.
9. Complete scheduled intake at JSI (Juvenile Services, Inc.), in January, 1991. Mr/s. M. will follow all recommendations made by Fran Rice including weekly group sessions. The purpose of these sessions will be to assist Mr/s. M. in learning appropriate discipline and nurturing skills. Attendance shall be 90% with all attendance and progress noted in writing.
The service plan shows the parents were to attend three different private counselling organizations: Bethesda, or a like therapy, was for counsel in the area of child sexual abuse; Cleveland County Guidance Center and JSI were both listed for the purpose of providing therapy in parenting skills.
Pursuant to 10 O.S. 1991 § 1130(A)(3), in order to terminate parental rights, the State must show, by clear and convincing evidence, that (a) the child is deprived; (b) such condition is caused by or contributed to by acts or omissions of his parent, and (c) termination of parental rights is in the best interests of the child. In the Matter of D.D.F., 801 P.2d 703 (Okl. 1990). The burden of evidence or persuasion then shifts to the parent to show conditions have changed and have been corrected since the adjudication of deprived child. In the Matter of Christopher H., 577 P.2d 1292 (Okl. 1978). The service plan is most often the primary evidence used by the parties in termination actions to prove their cases. The plan, however, is nothing more than evidence used to prove the statutory elements. The State uses noncompliance with the plan as evidence that parental rights should be terminated because the bad conditions caused by or in control of the parents have not been corrected within the statutory time. The parents use compliance with the plan to show the conditions leading to the adjudication have been corrected. Failure to comply with the service plan is not, however, a ground for termination of parental rights. Because the presumption is that the child's best interests lie with family integrity, the State still must show, by clear and convincing evidence, after having clearly and convincingly met the first two elements, that the child's best interests are served by terminating his parents' parental rights. Matter of C.G., 637 P.2d 66 (Okl. 1981).

Standard of Review
Termination of parental rights cases are created by statute. Matter of Christopher H., at 1293. They are triable to a jury. By analogy to common law cases where jury is waived, we must affirm a trial judge's determination of the facts *121 because, if it is supported by any competent evidence, it bears the force of a verdict rendered by a well-instructed jury. Bradley v. Clark, 804 P.2d 425 (Okl. 1990). The findings of a trial court sitting without a jury are entitled to the same weight that would be given verdict by a jury and if there is any evidence, including reasonable inferences therefrom, tending to support the findings, the trial court's judgment will not be disturbed on appeal. Maras v. Smith, 420 P.2d 483 (Okl. 1966). The trial court is not justified in terminating parental rights where a parent's failure to correct the conditions is contributed to by the agents to whom is entrusted the duty to help salvage the family relationship. Matter of Christopher H., at 1295.

Findings on Review
The trial court first found that neither parent attended Bethesda at a 90% rate nor did either parent attend an alternative kind of therapy. The record is clear on this count, however, that the voluntary agent of the court, Bethesda Alternatives, Inc., a private agency dedicated to counselling sex offenders, unilaterally terminated Appellants from its program without seeking a modification of the court order, knowing that attendance at the program was part of the court-ordered plan; knowing that there were no local alternative programs which accepted indigent clients and knowing that termination of Appellants from their program could result in Appellant's losing their parental rights.
Mr. M. was first denied admission to Bethesda's sex offender program because he denied any molesting behavior. DHS and the CASA workers asked Bethesda to re-evaluate Mr. M. Finally, Mr. M. was admitted on an eight-week provisional basis. The Bethesda administrator testified that, with little deviation, Bethesda terminated clients from their services who failed to admit to sexual abuse. The administrator agreed Mr. M.'s failure to admit to sexual abuse was a contributing factor in the decision to terminate him. The administrator also testified that they were the "only game in town" and that had Mr. M. admitted to sexual abuse she would have had to inform the authorities. The administrator knew that Mr. M. had not been convicted of any crime. The administrator who testified was not the therapist during the eight-week provisional period. Over hearsay objection, the court allowed the administrator to testify and give an opinion about whether either parent benefitted from the treatment at Bethesda. Because it is clear that Bethesda was the only game in town for indigent people, in this instance, Bethesda is impermissibly imbued with powers greater than the Constitution. If Mr. M. were guilty of sexual abuse, then his admission would amount to an involuntary relinquishment of his 5th Amendment right against self-incrimination because Bethesda is required to report such crimes to the authorities. If he is, or is not, guilty of such conduct, and denies the conduct, he is terminated from the program and risks the loss of his parental rights to his children. The integrity of the family is recognized as having constitutional dimension. In the Matter of A.D.B., 818 P.2d 483 (Okl. 1991).
Exactly why Mrs. M. was terminated from the Bethesda program is not particularly clear. According to the Bethesda administrator's evidence, the termination was unilaterally effectuated by Mrs. M.'s counselor based on an allegation that Mrs. M. breached the confidentiality of the group. Mrs. M. timely objected to the administrator's testimony on the ground of hearsay. The administrator was not Mrs. M.'s counselor and had no direct or personal knowledge of the facts behind the termination. Mrs. M.'s motion to strike the testimony should have been granted. It is clear from the court's findings that the hearsay was used as evidence leading to the termination of parental rights.
Under these circumstances, the court's findings that neither party attended on a regular basis are not supported by competent evidence. A court may not ground the termination on failure to comply with the plan, rather than failure to correct the conditions which led to the adjudication. A court may not allow private *122 agencies who volunteer to take part in the plan implementation to modify the plan without a modification of the court order. In so doing, the court has unconstitutionally abrogated its duties and allowed system of private law. Okl. Const. Art. 7, § 1.
The court next addressed the third service plan recommendation, that is, attendance at the Cleveland County Guidance Center. The court found Appellants did not attend on a regular basis and that the counselor said these parents just did not seem motivated. The record does not support this finding. Out of 29 scheduled visits, Appellants missed ten, but most often Appellants got a message through, albeit sometimes late. The counselor canceled three visits. Five of the missed visits were in the month before the counselor herself quit her employment. Although this counselor testified that Appellants still needed counselling before there could be declared a successful completion, this counselor, upon consultation with the DHS caseworker, unilaterally terminated counselling at the Guidance Center upon the termination of her own employment, without referring Appellants to another counselor at the center. This counselor testified that the DHS caseworker said Bethesda and JSI would be the primary counselors, so there would be no need to keep services available at the Guidance Center. Once again, agents of the court are modifying the court order without judicial imprimatur or notice to Appellants that these modifications may be used as evidence against them in the termination hearing. Without testifying to the legal ramifications, this counselor answered that she could not ethically, on her own motion and unilaterally, abrogate one third of the court-ordered counselling plan.
So far as the fourth service plan criterium, the court found a hint of change, where cleanliness around the home seemed to pick up and that Mrs. M. suddenly with a burst of energy seemed to become interested for a month or so. The record shows that at a previous review hearing, Appellants had passed the home environment test.
For items numbered five and six, the court stated: "And fifth, what about employment? Sometimes these parties were employed, sometimes they weren't. Even when you get down Item 6, the visitation wasn't completed, wasn't regular, wasn't consistent." Luckily for most families, unemployment is not a ground for termination of parental rights. The record also reflects the children were placed in foster care outside of Appellants community. Appellants live just north of Lexington, which is south of Noble and Norman in Cleveland County and the children were placed in a home east of Moore. In any event, the caseworker himself testified that he denied visits, once because the caseworker, believed erroneously that school was in session that day and once because he unilaterally determined that the visit had to be in his office because Appellants had requested the visit in the late afternoon. Although abandonment is a legitimate ground for terminating parental rights, irregular visitation is not.
The Court then talks about the "modicum" of child support not paid, that is, $40,00 per month. In light of the testimony of the caseworker where the admitted advising Appellants to skip child support payments and to use the money to try to repair their car, the court wisely stated he could understand that not being paid. We, on the other hand, do not understand the court's failure to admonish the caseworker for advising Appellants to disregard the court's order and the court's failure to place emphasis on the importance of paying child support. Although the court stated it was not concerned about the nonpayment of child support, it then stated, "but no regular job, no way to pay." We find this reasoning inconsistent and not supported by evidence.
The court next found Appellants failed to contact DHS twice per month.
Lastly the court found Appellants did not become better parents pursuant to their JSI counselling because they did not attend enough and when they did, the counselor said they did not seem to get anything out of it.
*123 The court found the parents excuses of illness (mononucleosis) and car trouble to be insufficient and terminated their rights in their children.
We appreciate Appellant's arguments that Mr. M.'s constitutional right not to incriminate himself was being impermissibly infringed by a private agency which required Mr. M. forego that right in order to preserve the integrity of the family. Although the private entity, Bethesda Alternative, Inc., acted as a voluntary agent of the court, we cannot extend to it the same powers as that of the State. Likewise, we cannot say Bethesda must give due process hearings before terminating services to its clients. We find the reciprocal happened in this case. It was ultimately the court's authority and duty to make orders in this case. The court, by relying on compliance with the plan as the ground for termination, and then by allowing the private and State agencies to modify the plan at Appellant's peril, has delegated its authority to those without authority to accept it. We understand that courts learn to trust and depend upon the agencies they use in implementing their orders. The courts may not, however, relinquish their own responsibilities to, and control over, the matters over which they have assumed jurisdiction.
We further find that too much of the evidence in this case was presented through hearsay. Neither of the two counselors from Bethesda testified. There was no direct evidence in the record of sexual abuse.
We find, based on the reasons set forth in this opinion, that there was insufficient evidence for a finding that the State carried its burden clearly and convincingly. We reverse the order terminating parental rights and remand the matter for new trial consistent with this opinion.
HANSEN, C.J., and BAILEY, P.J., concur.