In re L.G., W.G. and C.G., alleged deprived children.

William GARRION, Appellant,

v.

STATE of Oklahoma, Appellee.

No. 80752.

Court of Appeals of Oklahoma, Division No. 2.

Oct. 5, 1993.

Sandee Coogan, Norman, for appellant.

Steven D. Brinkley, Asst. Dist. Atty., Norman, for appellee.

REIF, Vice Chief Judge.

Natural father William Garrion appeals the termination of his parental rights to his son W.G. He contends that his failure to comply with the service plan was not a sufficient basis to terminate his parental rights under the facts of this case. We agree and reverse.

This proceeding was initiated by an emergency application to remove W.G. and two other children *from the home and custody of their natural mother* who was living apart from Mr. Garrion. Both the emergency application for removal and the subsequent petition to adjudicate the children as deprived were primarily based on allegations of neglect and abuse by the natural mother. The only allegation in the pleadings of any detrimental condition caused by Mr. Garrion concerned domestic violence directed against the natural mother in the presence of the children.

W.G. was removed from the home and placed in foster care where he remained throughout these proceedings. Mr. Garrion was appointed counsel who represented him at the adjudication hearing despite Mr. Garrion's failure to appear. W.G. was adjudicated "deprived" by stipulation and it appears that Mr. Garrion and his counsel have always considered this adjudication to be necessary and valid, including the service plan that was ordered at the same time.

Mr. Garrion's portion of the service plan was expressly concerned with providing a "stable environment" and demonstrating "his ability to parent his children" in the event Mr. Garrion should "choose to request [W.G.] be placed with him." In summary, Mr. Garrion's service plan prescribed (1) drug and alcohol assessment and treatment, as necessary, (2) full-time employment and verification of same, (3) submission of pay stubs to compute his child support obligation, and (4) assessment of his parenting skills and training, as necessary.

The State's motion to terminate his parental rights generally alleged that W.G. had been found to be a deprived child and that "the conditions causing said child to be found deprived were caused by or contributed to by acts and omissions of [Mr. Garrion] due to his failure to comply with the service plan." The motion to terminate then specifically cites Mr. Garrion's failure to obtain drug and alcohol assessment, failure to provide pay stubs, and failure to have an assessment of his parenting skills.

Following a trial on the merits, the trial court found that W.G. had been "adjudicated as a deprived child [and] the conditions causing said child to be found deprived were caused by or contributed to by acts and omissions of the natural father." The trial court further found that there had been "no substantial compliance with [the] service plan [to correct conditions] which led to said child being found deprived" and concluded that the best interest of W.G. required termination of Mr. Garrion's parental rights.

There is no question that the State has properly intervened on behalf of W.G. and for the most part has pursued legal remedies which are in W.G.'s best interests.

However, the termination of Mr. Garrion's parental rights was neither justified under the circumstances nor authorized by law. It is undisputed that W.G. was removed from the home and custody of the natural mother due to *her* neglect and abuse and that Mr. Garrion "[did] not reside in the home." The *only* detrimental condition caused by or contributed to by Mr. Garrion that formed the basis of the "deprived adjudication" was domestic violence against the natural mother in the presence of the child. There is no controversy that *no* further violence between Mr. Garrion and the natural mother occurred in the child's presence *after* the intervention of the State. The correction of this *sole* detrimental condition was achieved. By the express provisions of 10 O.S.1991 § 1130(A)(3), termination was authorized *only* in the event Mr. Garrion *failed to correct this particular condition* and contributing cause of W.G.'s deprived status.

■ The State has argued that it demonstrated that Mr. Garrion failed to protect W.G. from the neglect and abuse by the natural mother and that he failed to demonstrate that he would be a fit custodian for W.G. Even though we agree with the State on both points, neither Mr. Garrion's failure to protect W.G. nor his unfitness as a parent were alleged or adjudicated to be causal or contributing conditions to W.G.'s deprived status. Again, 10 O.S.1991 § 1130(A)(3) authorizes termination of parental rights *only* when "the parent has failed to show that the conditions which led to the making of said finding has not been corrected although the parent has been given three (3) months to correct the condition."

A parent's failure to demonstrate fitness to reassume parental custody of the child following a deprived adjudication *can be* the basis to terminate their parental rights. However, there must be a predicate adjudication of specific parental deficiencies and examples of unfitness before termination can be imposed by law. If that is the basis for a child being initially adjudicated deprived or a subsequent adjudication that the child has remained in a deprived status, then it is incumbent upon the State to plead and prove such causal or contributing conditions and the failure to correct them after a reasonable opportunity. In the instant case, however, the State has merely demonstrated that it has good cause not to place W.G. with Mr. Garrion because of his failure to comply with a service plan that had such placement as its objective "should [Mr. Garrion] choose to request [W.G.] be placed with him."

The order terminating William Garrion's parental rights to W.G. is clearly erroneous as a matter of law and is, therefore, reversed.

REVERSED.

BOUDREAU, P.J., concurs.

RAPP, J., concurs in part and dissents in part.

RAPP, Judge, concurring in part and dissenting in part.

I concur in the majority result and analysis. I would dissent only in the majority's holding that the father failed to demonstrate he would be a fit custodian. I believe that here the State was reaching and not necessarily in the best interests of W.G.