6 P.3d 1087 (2000)
2000 OK CIV APP 65
In the Matter of T.M., A.M., and A.M., Children Under 18 Years of Age.
Tammy McElroy, Appellant,
v.
State of Oklahoma, Appellee.
No. 93,412.
Court of Civil Appeals of Oklahoma, Division No. 1.
April 21, 2000.
Cliff A. Stark, Tulsa, Oklahoma, For Appellant,
Tim Harris, District Attorney, Yvonne Fisher Glick, Assistant District Attorney, Tulsa, Oklahoma, For Appellee.
Julie K. McMahon, Assistant Public Defender, Tulsa, Oklahoma, For T.M., A.M., and A.M.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 1.
*1089 BUETTNER, Judge:
¶ 1 Appellant Tammy McElroy (Mother) appeals from judgment entered on a jury verdict which terminated Mother's parental rights in her children T.M., A.M. and A.M. (children). Appellee State of Oklahoma (State) filed its petition seeking to have the children adjudicated deprived June 13, 1997. The petition was based on allegations that the father had sexually abused the oldest child, T.M. Mother stipulated to the deprived adjudication. Father was prosecuted for sexual abuse of T.M. and is now serving a life *1090 sentence.[1] The State then filed its Motion to Terminate Parental Rights as to Mother and a jury trial was held. Mother asserts as errors in the trial on the motion to terminate: 1) the addition of a ground for termination not included in the petition to adjudicate deprived; 2) the statutory provision allowing termination of parental rights upon the children being in foster care for 15 of the preceding 22 months is unconstitutional as an ex post facto law; 3) lack of competent evidence to support a finding that Mother failed to correct the conditions leading to the deprived adjudication, and 4) fundamental error in the failure to file an individual treatment and service plan. Finding no error, we affirm the order of termination of parental rights.
¶ 2 Children were removed from their parents' home and placed in foster care following an allegation that the father sexually abused the oldest child, T.M., then 8 years old. T.M. alleged that Father forced her to submit to sexual intercourse over the course of several months. T.M. also alleged that Mother knew of this abuse and did nothing to stop it. The petition to adjudicate Children deprived was filed June 13, 1997. It alleged that Children were deprived based on: 1) sexual abuse of T.M. by Father dating back to November 1996; 2) Mother's denial of the sexual abuse; 3) Mother's report that she was sexually abused by her step-father coupled with Mother allowing her step-father access to Children; and 4) a family history of domestic violence. Specifically, the petition charged Mother with failure to protect Children from abuse. Mother stipulated to the deprived adjudication September 4, 1997.
¶ 3 The first court report from a dispositional hearing was filed October 16, 1997.[2] In that report, Mother was first warned that failure to complete the standards of conduct may result in the termination of her parental rights. Additionally, a similar warning was placed at the end of the standards which were attached to the court report.
¶ 4 The same warning is included in the treatment plan, also attached to the court report. The first document in the record indicating Mother witnessed at least one occasion of sexual abuse of T.M. is the court report filed January 16, 1998, following a court review held January 14, 1998. That document noted that T.M. had reported that Mother entered the room while Father was sexually abusing T.M. and Mother turned around and walked out.
¶ 5 A report filed by the Oklahoma Center for Play Therapy, filed January 30, 1998, indicates that A.M. reported that Mother knew that Father was sexually abusing T.M. but "didn't want her to tell." A full disposition order following the October 15, 1997 disposition hearing was filed March 11, 1998. It included the standards of conduct agreed to by Mother. These standards included payment of child support, maintaining employment, completion of a parenting skills program, providing a safe, stable home free from fear of sexual abuse, visitation with Children, maintaining contact with the assigned social worker, completion of the non-perpetrator specific counseling program Phases I and II at Family and Children's Services, submission to a psychological evaluation, and completion of counseling for co-dependency, domestic violence and sexual abuse issues. This document also contained the warning that failure to correct the conditions could result in termination of parental rights.
¶ 6 Another court review hearing was held September 9, 1998. The hearing report filed September 17, 1998 again notes T.M.'s allegation that Mother witnessed the sexual abuse by Father. A court report made by the Oklahoma Center for Play Therapy filed January 15, 1999, includes the first mention of Mother leaving a stick of gum for T.M. upon witnessing the sexual abuse. A psychological evaluation of T.M. made in November 1998 and filed January 25, 1999 also mentions the stick of gum episode. A letter written by T.M. after the adjudication of deprived status includes T.M.'s statement that Mother walked into T.M.'s bedroom while the father was sexually abusing T.M. and left a stick of *1091 gum for T.M. and walked out. Mother raises the issue of the "stick of gum" allegation in her appeal and that objection will be discussed below.
¶ 7 The State filed its Motion to Terminate Parental Rights March 11, 1999. The Motion alleged that Children had been adjudicated deprived September 3, 1997 and that Mother had failed to correct the conditions leading to the deprived adjudication after being given at least three months in which to correct the conditions, citing 10 O.S.Supp. 1998 § 7006-1.1(A)(5). The motion further alleged that Mother had failed to support Children, citing 10 O.S.Supp.1998 § 7006-1.1(A)(7). The motion next asserted that Mother failed to protect Children from physical or sexual abuse which is heinous and shocking or which has caused Children to suffer severe harm or injury, citing 10 O.S.Supp.1998 § 7006-1.1(A)(10)(b). Finally, the State alleged that it is in Children's best interest to terminate Mother's parental rights.
¶ 8 Jury trial was held June 15 and 16, 1999, resulting in a verdict terminating Mother's parental rights. On appeal, Mother first argues that the addition of the ground that she failed to protect Children from abuse that is shocking and heinous in the Motion to Terminate essentially effected a readjudication of the deprived status on a new ground because that ground was not included in the original petition to adjudicate deprived. Mother also challenges the admission of the "stick of gum" letter to prove Mother knew of the sexual abuse and failed to protect Children. Mother asserts that this "new" evidence was not before the court at the time of the adjudication of deprived status. However, Mother has failed to present authority that evidence gained between the time of the deprived adjudication and the trial on the motion to terminate may not be admitted. T.M. testified at trial about the incident in which Mother walked into her bedroom while the father was sexually abusing T.M. Additionally, we note that failure to protect from abuse was listed as a ground in the petition to adjudicate deprived. Finally, the statutory provision for termination of parental rights based on failure to protect from physical or sexual abuse which is heinous or shocking does not require a prior adjudication of deprived status. See 10 O.S.Supp.1998 § 7006-1.1(A)(10). That section provides:
A. Pursuant to the provisions of the Oklahoma Children's Code, the finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations. The paramount consideration in proceedings concerning termination of parental rights shall be the health, safety and best interests of the child:
* * *
10. A finding in a deprived child action either that:
a. the parent has physically or sexually abused the child or a sibling of such child or failed to protect the child or a sibling of such child from physical or sexual abuse that is heinous or shocking to the court,
b. the child or sibling of such child has suffered severe harm or injury as a result of such physical or sexual abuse,
c. the parent has physically or sexually abused the child or a sibling of such child or failed to protect the child or a sibling of such child from physical or sexual abuse subsequent to a previous finding that such parent has physically or sexually abused the child or a sibling or such child or failed to protect the child or a sibling of such child from physical or sexual abuse,
d. the child has been adjudicated a deprived child, pursuant to the provisions of the Oklahoma Children's Code, as a result of a single incident of severe sexual abuse, severe neglect or the infliction of serious bodily injury or torture to the child, a sibling of the child, or a child within the household where the child resides, by the parent of the child, or
e. the parent has inflicted chronic abuse, chronic neglect or torture on the child, a sibling of the child or another child within the household where the child resides; * * *. (Emphasis added).
*1092 ¶ 9 The parties and the trial court conducted a lengthy debate at trial over whether the allegation of failure to protect from sexual abuse which is heinous and shocking must have been included in the original petition to adjudicate deprived status in order to be included in the grounds alleged in the motion to terminate parental rights. The State argued, and the trial court agreed, that § 7006-1.1(A)(10) does not require a prior adjudication of deprived status in order to terminate parental rights. Rather, that subsection requires only that termination may be effected under that subsection "in a deprived action," whereas § 7006-1.1(A)(5), the other subsection asserted in the instant case, specifically requires a prior adjudication of deprived status, along with at least three months in order to correct the conditions, before parental rights may be terminated.
¶ 10 Indeed, this court has explained that § 7006-1.1(A)(10) provides for immediate termination of parental rights upon a finding of sexual or physical abuse which is heinous or shocking, without a prior adjudication of deprived status or an opportunity to correct conditions. Matter of L. C., 1998 OK CIV APP 96, 962 P.2d 29, 33. In that case, this court held that "(o)nce the trier of fact determines that a child is deprived by reason of physical or sexual abuse, [§ 7006-1.1(A)(10)] authorizes immediate termination of parental rights only if the abuse is heinous or shocking." In other words, as § 7006-1.1(A)(10) provides, the finding that the child is deprived as a result of heinous or shocking abuse and therefore subject to immediate termination must be made as part of a deprived action. The State urged at trial that a termination proceeding is part of a "deprived action."
¶ 11 We agree that the entire proceeding, from the time a petition to adjudicate deprived has been filed until the matter has been completed, either by termination of parental rights or by dismissal of the action,[3] constitutes a "deprived action." Supporting this determination is the fact that other portions of § 7006-1.1(A) specifically require a prior deprived adjudication, while certain other subsections, particularly § 7006-1.1(A)(10)(a) do not require a prior deprived adjudication. The fact that Children, in the instant case, were previously adjudicated deprived does not preclude the State from proceeding under § 7006-1.1(A)(10)(a) to terminate parental rights for failure to protect from abuse which is heinous or shocking. Such process does not constitute a "readjudication" of the deprived status as urged by Mother because the deprived adjudication under § 7006-1.1(A)(5) provides the parent with 90 days in which to correct conditions leading to the deprived adjudication. Section 7006-1.1(A)(10) requires no prior adjudication and termination may be immediate. If the State develops evidence after the deprived adjudication that would support termination under § 7006-1.1(A)(10), we see no prohibition against proceeding under both § 7006-1.1(A)(5) and § 7006-1.1(A)(10) in a single termination proceeding.
¶ 12 We also look to the definition of "deprived child" in the Oklahoma Children's Code. Title 10 O.S.Supp.1996 § 7001-1.3(10)(a)(2) includes in the definition of deprived child one "who does not have the proper parental care or guardianship or whose home is an unfit place for the child by reason of neglect, abuse, cruelty, or depravity on the part of the child's parents, legal guardian, or other person responsible for the child's health or welfare." This definition indicates that as long as a child is removed from the parents' home because the home is unfit, the child may be considered deprived. Accordingly, the action remains a "deprived action" for the duration of the proceedings. The trial court obtains jurisdiction in a deprived action upon the filing of a petition or upon the assumption of custody and may retain jurisdiction until the child reaches 18 years. 10 O.S.Supp.1996 § 7002-1.1(A). Further, the Oklahoma Children's Code provides for the court to conduct disposition hearings after the deprived status adjudication, indicating that the trial court's jurisdiction in the deprived action continues until *1093 either termination of parental rights or dismissal or the child's attaining majority. See 10 O.S.Supp.1998 §§ 7003-5.1 through 7003-5.6b.
¶ 13 We find that Mother had notice at the time the petition to adjudicate deprived status was filed that failure to protect from sexual abuse had been alleged. We also note that the heinous and shocking ground was included in the motion to terminate parental rights filed three months before trial so that Mother was on notice at that time. Further, we find that the "deprived action" continued through the trial on the motion to terminate so that the State could allege in its motion to terminate a failure to protect from abuse which is heinous or shocking, without prejudicing Mother based on the statutory provision allowing immediate termination on that ground.
¶ 14 Mother's next assertion of error is that 10 O.S.Supp.1998 § 7006-1.1(A)(15) and 10 O.S.Supp.1998 § 7003-4.7 are unconstitutional because they deny Mother's right to a jury trial and because they constitute ex post facto laws. Section 7003-4.7 provides:
A. Except as otherwise provided by this section, the district attorney shall file a petition for termination of the parent-child relationship and parental rights with respect to a child or, if a petition has been filed, shall join in the petition filed by the child's attorney, pursuant to any of the following circumstances:
1. The child has been placed in foster care by the Department of Human Services for fifteen (15) of the most recent twenty-two (22) months. . . .
* * *
B. If any of the following conditions exist, the district attorney is not required to file a petition as provided in subsection A of this section for a deprived child:
1. At the option of the Department of Human Services or by order of the court, the child is properly being cared for by a relative;
2. The Department of Human Services has documented in the child's case plan that is provided or available to the court a compelling reason for determining that filing the petition would not be in the best interests of the child; or
3. The state has not provided to the family of the child, consistent with the time period in the state case plan, such services as the state deems necessary for the safe return of the child to the child's home, if reasonable efforts are required to be made with respect to the child.
Section § 7006-1.1(A)(15) provides:
A. Pursuant to the provisions of the Oklahoma Children's Code, the finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations. The paramount consideration in proceedings concerning the termination of parental rights shall be the health, safety and best interests of the child:
15. A child has been placed in foster care by the Department of Human Services for fifteen (15) of the most recent twenty-two (22) months. . . .
¶ 15 Mother argues that these sections arbitrarily require termination based on time and that these sections therefore are strict liability statutes which have denied Mother her right to a jury trial. Mother further argues that the three exceptions listed in § 7003-4.7(B) should be available to her as defenses under § 7006-1.1(A)(15). The answer to these contentions is that § 7006-1.1(A) states that termination is permissive, not mandatory, and includes the provision that the paramount consideration in any termination case is the best interests of the child. Accordingly, § 7006-1.1(A)(15) is not a strict liability statute, and Mother had the "defense" of best interests available to her.
¶ 16 Mother also argues that § 7006-1.1(A)(15) is unconstitutional as an ex post facto law. Mother asserts that, because the law became effective eleven months before trial in the instant case, the fifteen month time period embraced by the statute began before the statute became effective. This court has determined that § 7006-1.1(A)(15) may be an ex post facto law in certain circumstances. See In re M.C. and *1094 N.C., 1999 OK CIV APP 128, 993 P.2d 137. In In re M.C. and N.C., the only ground alleged for termination originally was failure to correct conditions. However, a mistrial was declared and two weeks before the retrial, the State added the ground that the children had been in foster care for 15 of the previous 22 months. The jury found that the father had corrected the conditions, but recommended termination based on the length of time in foster care. In In re M.C. and N.C., the motion to terminate had been pending since April 1997, while § 7006-1.1(A)(15) became effective June 11, 1998. This court noted that § 7006-1.6(A) indicates that § 7006-1.1(A)(15) applies to children who were in out-of-home placement as of November 17, 1997, so that the Legislature intended for the statute to be applied retroactively. This court concluded however, in In re M.C. and N.C., that the children had been in foster care during the pendency of termination proceedings, that the termination proceedings were initially filed before the effective date of § 7006-1.1(A)(15) and therefore could not have been included as a ground for termination. The court held that the father was being penalized for asserting his right to a jury trial, because the time included in the father's wait for a jury trial was included in the 15 month statutory period. The final factor considered by court was the fact that the § 7006-1.1(A)(15) ground was added only two weeks prior to trial. As a result, the court held that application of § 7006-1.1(A)(15) had the type of ex post facto effect forbidden by the Oklahoma Constitution.
¶ 17 The instant case is distinguishable. In the instant case Children were placed in foster care in June 1997. The Motion to Terminate Parental Rights was not filed until March 11, 1999, well after § 7006-1.1(A)(15) became effective. Further, Children were in foster care for fifteen months prior to the filing of the Motion to Terminate, so that Mother's assertion of her right to a jury trial did not contribute to the statutory period in foster care. Lastly, Mother had three months notice of this ground for termination. We therefore find no ex post facto application of law in the instant case.[4]
¶ 18 Mother next argues that the jury's determination that she failed to correct the conditions leading to the deprived adjudication is not supported by competent evidence. Mother correctly notes that failure to complete every requirement of the service plan is not alone grounds for termination of parental rights. See Matter of J.M. 1993 OK CIV APP 121, 858 P.2d 118. The State must prove that termination is in the best interests of Children by clear and convincing evidence and the burden then shifts to Mother to show that she has corrected the conditions leading to the deprived adjudication. Id. at 120, 858 P.2d 118. Deborah Harding, the social worker assigned to the case during the last six months of 1998, testified that while she was assigned to the case, she received no documentation that Mother met her child support obligation, became employed, completed parenting classes or signed releases of information. Further, Harding testified that Mother was living with her mother and step-father during the pendency of the case, despite Mother's reports that her step-father had sexually abused Mother as a child. Mother later moved in with her in-laws, the father's parents who continued to deny that their son had sexually abused T.M. One of the conditions which Mother was required to meet was providing a stable home free from the threat of sexual abuse. Harding opined that, although Mother completed some of the standards of conduct, Mother had not corrected the conditions leading to the deprived adjudication.
¶ 19 Patricia Miller, a child welfare treatment worker for DHS testified that Mother had made one child support payment and had not completed a parenting skills program. Miller testified further that Mother was living with her in-laws and that Children's grandmother (Mother's mother-in-law) had been denied visitation with Children because she had tried to coach them to change their testimony. Miller concluded that the in-laws' *1095 home was not a safe and stable environment for Children. Miller further testified that Mother had visited A.M. and A.M., but had not had regular visitation with T.M. Miller also testified that she had not received documentation that Mother received counseling at Domestic Violence Intervention Services.
¶ 20 Francey Bates, a therapist with the Parent/Child Center of Tulsa, testified that Mother attended a ten week session of counseling, but continued to deny that the father had sexually abused T.M. Bates opined that, although the father is out of the home and in prison, Children would continue to be at risk because Mother has refused to accept that the father abused T.M.
¶ 21 Lorie Oliver, a therapist with Oklahoma Center for Play Therapy testified that T.M. and A.M., the two older children in the family, became her clients in September 1998. Oliver testified that A.M. suffered sexual abuse from her sister T.M. Oliver testified that T.M.'s issues in therapy included lying, stealing, perpetrating sexual abuse, and not knowing right from wrong. Oliver reported T.M. was sexually abused by her father. Oliver reported that Children and Mother conducted a session together in which Children reported what changes they needed at home and Mother reacted flatly with no indication she would change. Oliver opined that termination of Mother's parental rights is in the best interests of A.M. and A.M.[5]
¶ 22 C.T. Hurd, an employee of the Mack Alford Correctional Center where the father is incarcerated, testified that Mother visited the father in prison at least twice a month beginning in October 1998 through the time of trial. Mother testified that she had informed her prior counsel in a letter that she did not plan to divorce her husband. Mother testified that she is unsure whether she believes that T.M. was sexually abused by the father.
¶ 23 Jeff Riggenbach, a therapist with the bair foundation, testified that he became T.M.'s therapist after she was transferred to therapeutic foster care as a result of her sexual abuse of her siblings. Riggenbach testified that T.M. suffers from severe anxiety associated with her parents. Riggenbach testified that T.M. hates Mother and is afraid Mother will bring another sexual abuser into the home. Riggenbach concluded that it is in T.M.'s best interests to terminate Mother's parental rights.
¶ 24 This summary of the evidence indicates that the State met its burden of proving by clear and convincing evidence that termination of parental rights was in the best interests of Children. Mother then had the burden of proving that she had corrected the conditions leading to the deprived adjudication. Matter of J.M., supra. Mother presented no evidence at trial. Accordingly, Mother did not satisfy her burden of proving that she had corrected the conditions.
¶ 25 Mother's final allegation of error on appeal is that fundamental error occurred because no individual treatment and service plan was filed. Mother argues that the only treatment plan filed in the instant case was filed April 29, 1999, a month after the Motion to Terminate Parental Rights was filed, despite 10 O.S.Supp.1998 § 7003-5.3(A), which requires a treatment plan to be filed within thirty days of the deprived adjudication. Mother further argues that the treatment plan failed to contain the statutory warning that failure to provide a safe home could result in termination of parental rights as required by 10 O.S.Supp.1998 § 7003-5.3(F). Mother failed to raise this issue at trial, but on appeal argues that it is fundamental error. However, as explained above, Mother's Stipulated Adjudication Order was filed September 4, 1997. A court report filed October 16, 1997 included court ordered standards for Mother to correct the conditions, and also included a warning to Mother that failure to complete the standards could result in termination of parental rights. Also attached to that October 1997 court report is a document titled "treatment plan" and signed by two social workers in October 1997. The treatment plan contains the statutory warning *1096 provided by § 7003-5.3(F). The record demonstrates that Mother was given statutory notice in the form of a treatment plan, along with court ordered standards well over a year before the Motion to Terminate was filed. We find no fundamental error.
¶ 26 Having found no errors at trial, the order terminating Mother's parental rights in T.M., A.M. and A.M. is AFFIRMED.
¶ 27 JONES, P.J., concurs.
¶ 28 GARRETT, J., concurring in result:
¶ 29 While I agree with Appellant's ex post facto argument, there were alternative grounds to uphold the judgment of the trial court.
NOTES
[1] Father stipulated to termination of his rights after his conviction.
[2] A dispositional hearing shall be held and a report filed within 40 days of the deprived adjudication. 10 O.S.Supp.1997 § 7003-5.5(A).
[3] See 10 O.S.Supp.1995 § 7003-4.4 ("If the court finds that the allegations of the petition are not supported by the evidence, the court shall order the petition dismissed and shall order the child discharged from any custody. . . .")
[4] Also see In the Matter of A.G. and E.G., 2000 OK CIV APP 12, 996 P.2d 494, n. 2, (approving the retroactive application of § 7006-1.1(A)(15)).
[5] T.M. had been moved to a foster home in another county and Oliver's sessions with her were discontinued.