8 P.3d 936 (2000)
2000 OK CIV APP 75
In the Matter of M.J. and J.J., Deprived Minor Children.
Carol Johnson, Appellant,
v.
State of Oklahoma, Appellee.
No. 93,766.
Court of Civil Appeals of Oklahoma, Division No. 3.
May 1, 2000.
Jeff McGrew, Tulsa, Oklahoma, for Appellant,
Tim Harris, District Attorney, Tracy L. Cain, Assistant District Attorney, Tulsa, Oklahoma, for Appellee.
David H. Herrold, Conner & Winters, Tulsa, Oklahoma, for the Minor Children.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3.
*937 Opinion by JOPLIN, Judge:
¶ 1 Appellant Carol Johnson, natural mother of the minor children, M.J. and J.J., seeks review of the trial court's order granting judgment on jury verdict terminating Mother's parental rights. In this appeal, Mother challenges the trial court's instructions to the jury as confusing, contrary to law and violative of constitutional protections. However, we find no error as alleged and hold the order of the trial court should be affirmed.
¶ 2 In June 1996, State filed a petition alleging, inter alia, Mother's physical abuse of M.J., on account of which State sought an adjudication of M.J. as deprived, and in August 1996, the trial court placed M.J. in foster care. After a jury trial in October 1996, and pursuant to the jury's verdict, the trial court entered an order adjudicating M.J. deprived.
¶ 3 On November 27, 1996, the trial court entered an order adopting a treatment plan for correction of the conditions leading to M.J.'s adjudication, to which Mother agreed to abide. Mother made some initial progress toward fulfillment of the plan requirements, but a year later, had not completed the plan.
¶ 4 In November 1997, Mother gave birth to J.J., but shortly, J.J. was hospitalized in respiratory distress. In December 1997, State filed a petition alleging J.J. as deprived, and in February 1998, the trial court placed J.J. in foster care. In January 1999, pursuant to Mother's stipulation, the trial court adjudicated J.J. deprived.[1] In March 1999, the trial court entered an order adopting a treatment plan for correction of the conditions leading to J.J.'s adjudication, and again Mother agreed to abide.
¶ 5 In July 1999, after Mother allegedly failed to correct the conditions leading to the deprived adjudications, State filed its petition seeking termination of Mother's parental rights as to both M.J. and J.J. After a three-day jury trial in September 1999, the jury returned a verdict against Mother, specifically finding, inter alia, Mother's children had been in the State's custody fifteen of the most recent twenty-two months. Pursuant to the jury verdict, the trial court entered its order terminating Mother's parental rights. Mother appeals.
¶ 6 Mother asserts the trial court's Instruction No. 8,[2] pursuant to 10 O.S.1998 *938 Supp. 7006-1.1(A)(15) permitting termination of parental rights where "[a] child has been placed in foster care by the Department of Human Services for fifteen (fifteen) of the most recent twenty-two (22) months," violates Article V, § 52 of the Oklahoma Constitution proscribing legislative destruction of existing causes of action or defenses. Mother argues that while 10 O.S. Supp.1999 7003-4.7(B)[3] permits non-prosecution of termination cases under certain other circumstances, § 7003-4.7(A)[4] and § 7006-1.1(A) require commencement of termination proceedings in fifteen-of-twenty-two-month cases. So, says Mother, by force of Article V, § 52, the Legislature could not validly deprive Mother of the § 7003-4.7(B) defenses in this § 7006-1.1(A)(15) fifteen-of-twenty-two-month case. Mother also challenges § 7006-1.1 as a strict liability statute violating her right to jury trial guaranteed by the Oklahoma Constitution, Article II, § 19.
¶ 7 Section 7006-1.1(A)(15) indeed permits termination of parental rights where "[a] child has been placed in foster care by the Department of Human Services for fifteen (fifteen) of the most recent twenty-two (22) months." Further, the Oklahoma Legislature directed commencement of parental-rights-termination actions as to "adjudicated deprived children who have been in [DHS] custody for fifteen (15) of the most recent twenty-two (22) months, and who were in out-of-home placement in [DHS] custody as of November 17, 1997," with priority given to those case of adjudicated children in custody the longest. 10 O.S. 7006-1.6(A), (B), (D).
¶ 8 In the present case, the trial court placed M.J. in foster care in August 1996, and J.J. in December 1997. State filed its petition for termination of Mother's parental rights in July 1999, alleging inter alia, State's custody of M.J. and J.J. for the requisite period under § 7006-1.6 and § 7006-1.1(A)(15).[5] This fact was not controverted by Mother at trial.
¶ 9 As a preliminary matter, we find Mother's reliance on § 7003-4.7 misplaced. That is, § 7003-4.7(B) delineates circumstances in which State may decline to seek termination of parental rights without regard to the period of foster care, as, for instance, when the State has failed to provide the necessary services in order for the parent to complete the treatment plan. See also, 10 O.S. 7006-1.6(B).[6] We read § 7003-4.7(B) and § 7006-1.6(B) *939 to provide safeguards for the parent prior to initiation of termination proceedings, and inasmuch as see nothing in either of these sections depriving Mother of any defense, we find no violation of Article V, § 52.
¶ 10 Moreover, it is apparent to this Court that, reading § 7006-1.1(A) together with § 7003-4.7(B) and § 7006-1.6(B), where reasonable efforts to return the adjudicated deprived child(ren) to the parent(s) have proved fruitless as to result in prolonged foster care placement of the child(ren), the Legislature clearly viewed extended placement in foster care, without progress toward reunification of the family, to be so detrimental to those children's best interests as to justify termination of parental rights. The Court of Civil Appeals has recognized this provision as reasonably related to valid state interests and not unconstitutional per se. Matter of M.C. and N.C., 1999 OK CIV APP 128, 993 P.2d 137.
¶ 11 We see nothing in the cited sections or anywhere else in the Oklahoma Children's Code, 10 O.S. 7001-1.1, et seq., proscribing a parent's presentation of defensive matters otherwise available in proceedings under provisions other than the fifteen-of-twenty-two-month section. These include, but are not limited to, adequacy of notice of either commencement of proceedings, or the conditions in need of remediation, or the terms of the service plan, or the consequences of failure to correct the conditions leading to the deprived adjudication. See, e.g., Matter of M.C. and N.C., 1999 OK CIV APP 128, ¶ 9, 993 P.2d at 140 (where father given inadequate notice of State's intent to seek termination on (A)(15) grounds, judgment terminating parental rights reversed for unconstitutional, retroactive application.) Having so observed, and further finding § 7006-1.1 recognizes the health, safety, and best interests of the child as paramount, we therefore reject Mother's Article V, § 52 challenge.
¶ 12 In the present case, and at the time of commencement of termination proceedings, M.J. and J.J. had been in foster care for 34 months and 18 months respectively. State sought to terminate Mother's parental rights in July 1999 on multiple grounds, including, inter alia, the children's placement in foster care for a period exceeding fifteen of the most recent twenty-two months under § 7006-1.1(A)(15). At jury trial, Mother was afforded every opportunity to present whatever defensive matters she had. See, e.g., Lebus v. Carden, 1978 OK 91, ¶ 5, 583 P.2d 503, 504.[7] On consideration of the evidence, the jury found against Mother on (A)(15) grounds, and specifically determined termination of parental rights in M.J.'s and J.J.'s best interests. Under these circumstances, and inasmuch we have construed the Oklahoma Children's Code as posing no bar to presentation of any defensive matters otherwise available in termination cases, Mother can hardly assert a denial to her right to trial by jury guaranteed by Article II, § 19.
¶ 13 Having so held, we have reviewed the (A)(15) instructions requested and refused, and the instructions given. We hold the challenged instructions sufficiently set forth the elements for termination of parental rights under § 7006-1.1(A)(15) with adequate clarity as to provide the jury with guidance for proper evaluation of evidence offered in support of State's claims and Mother's defenses. See, e.g., Kimery v. Public Svc. Co. of Okla., 1980 OK 187, ¶ 20, 622 P.2d 1066, 1072.
¶ 14 The order of the trial court granting judgment on jury verdict terminating Mother's parental rights is therefore AFFIRMED.[8]
¶ 15 ADAMS, J., concurs; HANSEN, V.C.J., dissents.
NOTES
[1] During the interim, in March 1998, State filed, then withdrew, a petition to terminate Mother's parental rights to M.J.
[2] The trial court's Instruction No. 8 provided:

You are further instructed that the State seeks termination of parental rights on the alternative ground of the length of time the children have lived in foster care. The law provides that in order to terminate parental rights due to the length of time a child has spent in foster care you must find that the child has been placed in foster care by the Department of Human Services for fifteen (15) of the most recent twenty-two (22) months and that termination of parental rights is required for the health, safety, and best interests of the child(ren).
For purposes of this finding, you are instructed that the child [M.J.] entered foster care August 18, 1996 and the child [J.J.] entered foster care February 20, 1998.
[3] This section provides:

B. If any of the following conditions exist, the district attorney is not required to file a petition as provided in subsection A of this section for a deprived child:
1. At the option of the Department of Human Services or by order of the court, the child is properly being cared for by a relative;
2. The Department of Human Services has documented in the child's case plan that is provided or available to the court a compelling reason for determining that filing the petition would not be in the best interests of the child; or
3. The state has not provided to the family of the child, consistent with the time period in the state case plan, such services as the state deems necessary for the safe return of the child to the child's home, if reasonable efforts are required to be made with respect to the child.
[4] This section provides in relevant particular:

A. Except as otherwise provided by this section, the district attorney shall file a petition for termination of the parent-child relationship and parental rights with respect to a child or, if a petition has been filed, shall join in the petition filed by the child's attorney, pursuant to any of the following circumstances:
1. The child has been placed in foster care by the Department of Human Services for fifteen (15) of the most recent twenty-two (22) months . . . . [or]
2. The child has been placed in foster care by the Department of Juvenile Justice or in a child-care institution, as defined in Section 472(c)(2) of the Social Security Act, by the Department of Juvenile Justice for fifteen (15) of the most recent twenty-two (22) months. . . .
[5] Indeed, the record bears out State's custody of M.J. and J.J. for a period much longer: M.J. for about 36 months, and J.J. for about 18 months.
[6] That section provides:

. . . [A] petition to terminate parental rights is not required based upon the following:
1. The child is being cared for by a relative;
2. The Department has compelling reasons for determining such a filing of termination of parental rights would not be in the best interests of the child; or
3. The state has not provided to the family of the child, consistent with the time period in the state case plan, such services as the state may deem necessary for the safe return of the child to the child's home, if reasonable efforts are required to be made with respect to the child.
[7] "[N]otice and an opportunity to be heard are two of the essential elements of due process of law."
[8] Mother's challenges to the (A)(5) "failure to correct" instructions may, indeed, have some merit. See, In re F.B., 1999 OK CIV APP 96, 990 P.2d 309; In re L.G., 1993 OK CIV APP 162, 864 P.2d 1301; Matter of J.M., 1993 OK CIV APP 121, 858 P.2d 118. But see, In the Matter of A.G. and E.G., 2000 OK CIV APP 12, 996 P.2d 494. However, having found the trial court's (A)(15) instructions unaffected by error, and competent evidence to support the jury's determination of existence of the (A)(15) ground for termination, we find it unnecessary to address Mother's (A)(5) argument.