2002 OK CIV APP 58

In the Matter of K.C., T.C., K.C., & T.C., Adjudicated Deprived Children.

Sheri L. Hadley, Appellant,

v.

State of Oklahoma, Appellee.

No. 96,365.

Court of Civil Appeals of Oklahoma, Division No. 2.

April 9, 2002.

---

David A. Webb, Idabel, OK, for Appellant.

L. Walter Hamilton, District Attorney, Virginia D. Sanders, Assistant District Attorney, Idabel, OK, for Appellee.

Opinion by TOM COLBERT, Presiding Judge:

¶1 Sheri L. Hadley (Mother) appeals a judgment of the trial court terminating her parental rights to her children, K.C., T.C., K.C., and T.C. (Children). The issue on appeal is whether there is sufficient evidence to support a finding that the State of Oklahoma (State) met its burden of proving by clear and convincing evidence that termination of Mother's parental rights was in Children's best interests. We find there is not, reverse the judgment, and remand for further proceedings.

## BACKGROUND

¶2 In April 1999, State filed a petition to have Children adjudicated deprived. State sought the adjudication on the grounds that Mother and her youngest child [1] both tested positive for methamphetamines at the time of the child's birth; that Mother's home environment had contributed to neglect of Children in that the electricity and water had been disconnected, Mother and Children had been evicted from their trailer home, Mother slept all day, stayed out late at night and left Children with inadequate supervision, and refused to get a job; and that Mother had abandoned Children by voluntarily placing them in foster care on March 31, 1999.[2]

¶3 Mother stipulated to the allegations in the petition. On May 11, 1999, the trial court entered an order finding that Children were deprived and placed them in the custody of the Department of Human Services (DHS). The court adopted a treatment plan, submitted by DHS, which required Mother to obtain drug and alcohol abuse counseling; obtain, complete and return an employment application to the local employment office; attend Narcotics Anonymous meetings at a frequency to be determined by the substance abuse counselor; cooperate with Child Wel-

---

1. K.C., the oldest child, was born on March 14, 1986; T.C. was born on October 21, 1988; K.C. was born on February 14, 1990; the youngest child, T.C., was born on December 22, 1998.

2. The petition further alleged that Children's father did not support them or provide for their care. Mother's youngest child has a different biological father than the older three children.

fare Services (CWS) and follow any and all recommendations of CWS; attend individual counseling for anger and behavior management; and enroll in and complete parenting skills classes. The ultimate goal of the treatment plan was that Mother would be able to provide Children a secure home environment. DHS filed updated treatment plans in September 1999 and March 2000. The updated plans retained the same requirements as the original plan.

¶ 4 On June 23, 2000, State filed a motion to terminate Mother's parental rights.[3] State's primary allegations were that Mother was unwilling to complete her treatment plan after having been given fourteen months; she failed to support her children financially; she had not been compliant with DHS and CWS, and Children had been in foster care for more than fifteen of the most recent twenty-two months. A non-jury trial was conducted on May 2, 2001, after which the trial court terminated Mother's parental rights to Children on the grounds that: (1) Mother failed to complete her treatment plan and failed to correct the conditions which led to Children's deprived adjudication; (2) Mother failed to pay any child support as ordered by the court and in accordance with her ability to pay; and (3) Children had been in foster care for fifteen of the most recent twenty-two months. Mother appeals.

### DISCUSSION

¶ 5 In proceedings to terminate parental rights, the paramount consideration is the health, safety, welfare, and best interests of the child. 10 O.S. Supp.2000 § 7006–1.1(A). There is a presumption that a child's best interests lie in preserving family integrity. *In re J.M.*, 1993 OK CIV APP 121, ¶ 4, 858 P.2d 118, 120. Therefore, the standard of proof required for the termination of parental rights under section 7006–1.1(A) is "clear and convincing." *In re C.G.*, 1981 OK 131, ¶ 17, 637 P.2d 66, 71.[4] "Clear and convincing" evidence is "that measure or degree of proof which will produce in the mind of the

trier of fact a firm belief or conviction as to the truth of the allegation sought to be established." *Id.* at ¶ 17 n. 12, 637 P.2d at 71 n. 12. This standard balances the fundamental rights of parents with the State's duty to protect the children within its borders. *Id.* at ¶ 17, 637 P.2d at 70. The State must prove by clear and convincing evidence the potential for parental harm to the child. *Id.* at ¶ 17, 637 P.2d at 71. Additionally, the State must clearly and convincingly prove that termination of parental rights is in the best interests of the child. *J.M.*, 1993 OK CIV APP 121, ¶ 4, 858 P.2d at 120. In the absence of sufficient evidence that the State met its burden clearly and convincingly, an order terminating parental rights will be reversed on appeal. *Id.* at ¶ 19, 858 P.2d at 123.

¶ 6 Section 7006–1.1(A)(5) provides that a trial court may terminate parental rights upon finding that the child has been adjudicated deprived; the deprived condition is caused by or contributed to by acts or omissions of the parent; termination of parental rights is in the best interests of the child; and the parent has failed to show that the condition which led to the deprived adjudication has been corrected, although the parent has been given not less than three months to correct the condition. *See also* 10 O.S. Supp. 2000 § 7003–5.5(I)(1). Title 10 O.S. Supp. 2000 § 7006–1.1(A)(15) provides that a trial court may terminate parental rights upon a finding that a child has been placed in foster care by DHS for fifteen of the most recent twenty-two months. Children have been in foster care since May 11, 1999. *See* § 7006–1.1(A)(15)(a) & (b). State argued at trial that Children were in foster care for that duration of time because Mother failed to complete the requirements of her treatment plan.

¶ 7 Mother correctly points out that failure to comply with the service plan, in itself, is not a ground for termination. *See J.M.*, 1993 OK CIV APP 121, ¶ 4, 858 P.2d at 120. *See also In re A.G. and E.G.*, 2000 OK CIV APP 12, ¶ 6, 996 P.2d 494, 497 ("The

---

**3.** State also sought termination as to both biological fathers. However, the fathers' parental rights are not at issue here.

**4.** *In re C.G.*, 1981 OK 131, 637 P.2d 66, cites to 10 O.S. Supp.1977 § 1130, an earlier version of 10 O.S. Supp.2000 § 7006–1.1(A).

test, however, is not whether [the parent] completed the plan but whether [the parent] corrected the conditions which led to the adjudication."). The State uses noncompliance with the plan as evidence that parental rights should be terminated because the conditions which led to the deprived adjudication have not been corrected, and parents use compliance with the plan to show that the conditions which led to the deprived adjudication have been corrected. *J.M.*, 1993 OK CIV APP 121, ¶ 4, 858 P.2d at 120.

¶ 8 At the hearing, the trial court acknowledged that Mother had substantially complied with certain aspects of the treatment plan. However, the court determined that termination was in order because Mother had taken too long to complete the plan. We disagree with the court's determination.

¶ 9 The primary condition which led to the deprived adjudication was Mother's substance abuse. The record contains a certificate of completion from Kiamichi Council on Alcoholism & Other Drug Abuse, Inc. (Kiamichi Council), reflecting that Mother completed substance abuse counseling on March 9, 2000. State argues on appeal that Mother did not complete the substance abuse counseling within ninety days. However, section 7006–1.1(A)(5) and section 7003–5.5(I)(1) provide that a parent must be given *not less than* three months to correct the conditions which led to the deprived adjudication. The statute does not establish a maximum time limit.

¶ 10 The treatment plan required that Mother attend Narcotics Anonymous meetings at a frequency to be determined by her substance abuse counselor. Mother's substance abuse counselor at Kiamichi Council, Terry Wallace, testified that he never told Mother to attend Narcotics Anonymous meetings. Although he recommended that she attend them on an "as needed" basis, he never set a number of meetings or gave any specific meeting times. On cross-examination, Wallace admitted that the common

sense meaning of "as needed" was that the individual could determine when and how often to attend the meetings.[5]

¶ 11 Moreover, State did not provide any evidence or make any implication that Mother was currently using drugs. Mother took and passed at least two random urinalysis tests. Although there were instances when she refused to take the tests, Tricia Burrell, a CWS caseworker, testified that Mother's refusal was based on the fact that she did not have the money to pay for the tests. Burrell stated that Mother took the tests when CWS paid for them.

¶ 12 The record also reflects that Mother completed parenting skills classes on December 30, 1999. Although Burrell testified that Mother was not able to verbalize what she had learned from the classes, Mother did complete them.

¶ 13 Although Mother admitted that she never registered with the local employment office, she also testified that she had obtained employment on her own. Burrell admitted that, while she worked with CWS from October 1999 to June 2000, she had knowledge that Mother was employed as a bartender. However, she did not know how long Mother was employed. Mother testified that, since the fall of 1999, she had not been without a job for more than three weeks. She worked as a truck driver, bartender, and beautician, and was employed at the time of trial.

¶ 14 Mother sought individual counseling at Carl Albert Mental Health Center, the facility recommended by CWS. However, Burrell testified that Carl Albert informed her that Mother did not meet their criteria for counseling. Mother testified that she sought counseling at another facility but did not receive it. Burrell stated that, when she discovered that Mother was not receiving individual counseling, she gave her a list of counselors she could contact.[6] Although one of the counselors provided services free of charge, the others charged a fee, and, ac-

---

5. Wallace further testified that his assessment and evaluation of a particular individual depends partially upon a substance abuse screening test known as S.A.S.S.I. Wallace did not have a record of a S.A.S.S.I. being performed on Moth-

er. Mother testified that DHS administered the test but did not disclose the results to her.

6. Mother denied having received the list of counselors prior to trial.

cording to Mother, she could not pay. According to the testimony of both Mother and Burrell, inability to pay was a primary reason that Mother did not receive individual counseling.

¶ 15 State bases its allegation that Mother failed to cooperate with CWS primarily upon the fact that Mother did not keep workers aware of her address and phone number. State also argues that Mother repeatedly blamed CWS for breaking up her family. As the trial court noted, parents frequently dislike being forced to cooperate with DHS. Although Mother kept CWS informed of her whereabouts on a limited basis, it is clear that, on at least one occasion, Burrell visited Mother while Mother was living with friends. When asked whether the home environment was appropriate or inappropriate, Burrell responded, "It was a home." Mother testified that she does have her own home and is ready to care for Children.

¶ 16 Burrell also testified that Mother missed only one visit with Children. She stated that, although some of the visits went well, others did not. However, the only negative aspects Burrell cited were that Children were sometimes "upset" after the visits and Mother often made empty promises that she would take Children home. Neither Burrell nor anyone else alleged that Mother yelled at Children or physically abused them.

¶ 17 Although Mother admitted that she did not pay any child support as required by 10 O.S. Supp.2000 § 7006 1.1(A)(7), it is clear that the trial court did not base termination primarily upon this factor. Regardless of the statutory bases for termination, State did not meet its burden of showing clearly and convincingly that there was potential for parental harm to Children. *See C.G.*, 1981 OK 131, ¶ 17, 637 P.2d at 71. Moreover, State did not clearly and convincingly prove that termination was in Children's best interests. *See* § 7006–1.1(A); *J.M.*, 1993 OK CIV APP 121, ¶ 4, 858 P.2d at 120. The most evidence which State presented to show harm to Chil-

dren was that they were sometimes emotionally upset—a common occurrence—after visits with Mother and that Mother promised them things she could not deliver. Although protracted foster care placement is generally not in children's best interests, there is evidence showing that Mother corrected the conditions which led to the deprived adjudication, and she substantially complied with her treatment plan.

¶ 18 This court has often stressed that the right of a parent to the companionship, care, custody, and management of the child is a fundamental right protected by both the federal and state constitutions. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 116, 117 S.Ct. 555, 564, 136 L.Ed.2d 473 ("Choices about marriage, family life, and upbringing of children are among associational rights this Court has ranked as 'of basic importance in our society,' rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect.") (citation omitted); *In re M.C.*, 1999 OK CIV APP 128, ¶ 9, 993 P.2d 137, 140 ("It is fundamental in Oklahoma that 'the right of a parent to the care, custody, companionship and management of his or her child is a fundamental right protected by the Federal and State Constitutions.' "). *See also Alford v. Thomas*, 1957 OK 218, ¶ 21, 316 P.2d 188, 192 ("It has long been the rule of this Court that the parents have by nature, as well as by law, the legal right to the custody of their minor children. This right will always control the judgment of the courts, unless circumstances of great weight and importance connected with the necessary welfare of the child exists to overcome such strict legal right.").

¶ 19 It is because of this fundamental right which parents have in the custody of their children that we are mindful of the gravity of the sanction imposed by termination. We emphasize that termination is not a matter to be taken lightly by the courts, and State must always be held to its burden of proof.[7]

---

7. Mother argues that 10 O.S. Supp. §§ 7006–1.1(A)(7) & (A)(15) are unconstitutional. We need not address this argument in light of our decision.

## CONCLUSION

¶ 20 State did not clearly and convincingly show that Mother posed a harm to Children or that termination was in Children's best interests. Therefore, we reverse the order terminating Mother's parental rights and remand the case for further proceedings.

¶ 21 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

RAPP, J., and GOODMAN, J., concur.